Filed 6/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JUAN CARLOS PINELA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>NEIMAN MARCUS GROUP, INC.,<br><br>        Defendant and Appellant. | A137520<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-07-466079) |

## I.  INTRODUCTION

Plaintiffs Bernadette Tanguilig and Juan Carlos Pinela brought this putative class action against their former employer, Neiman Marcus Group, Inc. (NMG), alleging violations of the California Labor Code, and NMG moved to compel arbitration.  The trial court initially ordered arbitration of all Pinela's claims except his claim under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), but later reconsidered its order and denied the motion, concluding the arbitration agreement at issue is illusory.  On appeal, NMG argues (1) the court lacked jurisdiction to reconsider its initial order, (2) an arbitrator, rather than a court, must determine any challenges to the enforceability of the arbitration agreement, and (3) the arbitration agreement is enforceable and encompasses all Pinela's claims, including his PAGA claim.  Finding no merit to these arguments, we affirm.

## II.  BACKGROUND

NMG is a luxury-brand fashion retailer headquartered in Texas with stores across the United States.  Tanguilig originally sued NMG in August 2007.  The case was

designated complex, and after a series of pretrial motions not relevant here, she filed the operative third amended complaint (TAC) in March 2011, among other things adding Pinela as a second proposed class representative. Tanguilig and Pinela worked for NMG in California and sought to represent a class of NMG's current and former California employees. The TAC alleges various wage-and-hour claims under the California Labor Code and includes a cause of action under PAGA.[1]

In August 2011, after plaintiffs moved for class certification, NMG—prompted, it says, by the United States Supreme Court's then recent decision in *AT & T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, 131 S.Ct. 1740, 1748 (*Concepcion*)— moved to compel arbitration of Pinela's claims under NMG's mandatory arbitration program for employment-related disputes. In support of its motion, NMG submitted evidence that, at the time of Pinela's employment (November 2007 through November 2009), it distributed to each new employee a copy of its "Mandatory Arbitration Agreement," brochures explaining the arbitration program, and an employee handbook that included a brief description of the program (collectively, the NMG Arbitration Agreement or the

---

[1] The pleaded claims, specifically, are for alleged violations of (1) Labor Code sections 226.7 and 512 and the implementing Industrial Welfare Commission (IWC) Wage Order therefor (failure to provide meal periods and rest breaks); (2) Labor Code section 226 (failure to provide accurate itemized statements); (3) Labor Code sections 510, 1194 and 1198 and the implementing IWC Wage Order therefor (failure to pay overtime for off-the-clock work); (4) Labor Code section 1194 and the implementing IWC Wage Order therefor (failure to pay minimum wages for all hours worked); (5) unspecified Labor Code provisions (failure to pay wages for all hours worked off-the-clock); (6) Labor Code sections 201 and 202 (failure to pay all wages at time of discharge); (7) PAGA, Labor Code section 2699 et seq. (based on violations of Labor Code sections 201, 202, 204, 226, 226.7, 510, 1194, 1198 and IWC Wage Order No. 4); and (8) Business and Professions Code section 17200 et seq. (based on the above Labor Code violations). The prayer for relief includes demands for statutorily authorized relief in the form of unpaid wages and overtime; penalties; restitution; costs and attorney fees pursuant to Civil Code section 1021.5 and Labor Code sections 218.5, 226, subdivision (e), 1194, and 2699; and prejudgment interest pursuant to Labor Code section 218.6.

Agreement).  Under the NMG Arbitration Agreement, any employee working for NMG after July 15, 2007 is deemed to have consented to the terms of the Agreement.

Included within the scope of the Agreement are "any and all complaints, disputes, or legal claims that [Pinela or NMG] may have against the other, arising out of or connected in any way" with Pinela's employment, including claims for "[v]iolations of any . . . state . . . statute, ordinance, regulation, or public policy relating to . . . meal or rest breaks, . . . minimum wage and overtime pay, . . . or payment at termination."  The Agreement prohibits the arbitrator from "consolidat[ing] claims of different employees into one (1) proceeding" or from "consider[ing], certify[ing], or hear[ing] an arbitration as a class action."  During the orientation process for all new employees, NMG provided each new employee with two acknowledgment forms that refer to the arbitration program.  The forms stated that the employee had received the Agreement and understood that it required the employee and NMG to arbitrate any disputes.  Pinela signed the two acknowledgment forms in November 2007.[2]

On November 22, 2011, the trial court issued an order granting NMG's motion in part.  The court found that the NMG Arbitration Agreement did "not clearly and unmistakably designate the question of arbitrability to an arbitrator," but ruled that the Agreement is enforceable and that "[t]he scope of the . . . Agreement is broad enough to cover all of . . . Pinela's claims in this case with the exception of [his] claim under

---

[2] Tanguilig, who was already employed by NMG when the arbitration program was initiated, objected to the Agreement and asked NMG to make changes to it.  NMG declined to do so, emphasizing that its arbitration program was "not optional" and would apply to Tanguilig if she continued to work for NMG.  Tanguilig states that she therefore declined to report for work and was terminated.  As a result, she never became a party to the NMG Arbitration Agreement, which is presumably why NMG sought to compel arbitration only against Pinela, and not against her.  Tanguilig's claims proceeded in court, but were ultimately dismissed based on the five-year statute, Code of Civil Procedure section 583.310.  That dismissal is the subject of another appeal pending in this court (No. A141383).  On our own motion, we take judicial notice of the record in that appeal.

3

[PAGA], which is not subject to arbitration . . . ." "All other questions on arbitration," the court ruled, "including the impact, if any, of the California Supreme Court's decisions in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [(*Armendariz*)] and *Gentry v. Superior Court* (2007) 42 Cal. 4th [443] [(*Gentry*)] [abrogated as stated in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360, 366], are for the arbitrator to decide." Pinela sought writ relief (No. A134027), which this court denied in January 2012 on the ground he has "an adequate remedy at law by appeal after a judgment confirming any arbitration award."

In a joint case management conference statement filed with the trial court following our order denying the writ petition, plaintiffs' counsel reported that Pinela had submitted a formal demand for arbitration before the American Arbitration Association (AAA), but that, as of February 2012, the parties had "not yet selected an arbitrator . . . and arbitration proceedings [had] not yet begun." Given the nascent state of the arbitration proceedings, plaintiffs' counsel suggested the court might wish to reconsider its arbitration order in light of the February 16, 2012 decision in *Ajamian v. CantorCO2e L.P.* (2012) 203 Cal.App.4th 771 (*Ajamian*). In a March 2012 order, the court, "on its own motion and exercising its inherent authority," decided to reconsider its arbitration order. The parties stipulated to a stay of all arbitration proceedings.[3]

---

[3] At the time these events were taking place, the trial court had before it a separate but related case, *Monjazeb v. Neiman Marcus Group, Inc.* (*Monjazeb*) (San Francisco Superior Court Case No. CGC-10-502877), presenting many of the same issues that this case does. *Monjazeb* was another case against NMG, brought by a different plaintiff, also pleaded as a class action, and alleging nearly identical statutory wage-and-hour claims to those asserted by Pinela and Tanguilig. *Monjazeb* was assigned to the same complex case department trial judge who handled this case. Pursuant to the NMG Arbitration Agreement, NMG moved to compel arbitration against the plaintiff in *Monjazeb* on August 3, 2011, two days after it made the same motion against Pinela. The trial court issued nearly identical orders granting the motions in part as to Pinela and Monjazeb. The plaintiff in *Monjazeb* sought writ relief in this court on virtually the same grounds advanced by Pinela in his writ petition in this case. (On our own motion, we take judicial notice of the records in the *Pinela* writ proceeding, No. A134027, and in the

4

Initially, no one questioned whether the trial court had jurisdiction to reconsider or modify its order granting NMG's motion to compel arbitration. All parties were in favor of it, for different reasons. Pinela and Tanguilig wanted another shot at convincing the court to deny the motion outright. And NMG, facing an effort by Pinela to convince the AAA to permit him to proceed on a class basis under *Gentry*, an issue that the trial court's ruling compelling arbitration left open for consideration by the arbitrator, wanted a definitive order that foreclosed any possibility of class arbitration in light of *Concepcion*. In fact, NMG affirmatively took the position that the trial court had jurisdiction to reconsider. After the briefing relating to reconsideration was underway, however, NMG took a different tack and argued the trial court lacked jurisdiction to reconsider its order.

Reconsideration proceedings eventually expanded to cover a number of issues, including the effect of the April 17, 2012 decision in *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425 (*Peleg*). In *Peleg*, Division One of the Second District Court of Appeal held an arbitration agreement identical in form to the agreement at issue in this case was illusory under Texas law (which the appellate court applied pursuant to a choice of law provision) and therefore unenforceable. (*Peleg*, *supra*, at pp. 1445, 1448, 1467.) In an order dated November 8, 2012, the trial court (1) vacated its November 22, 2011 order compelling arbitration, and (2) denied NMG's motion to compel arbitration.

_____

*Monjazeb* writ proceeding, No. A134624.) The writ proceeding in *Monjazeb* took a slightly different course than Pinela's writ proceeding did, however. On February 27, 2012, our colleagues in Division Two called for an informal response to the *Monjazeb* writ petition and issued a *Palma* notice indicating that it might grant the writ on a peremptory basis. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180.) While the *Monjazeb* writ proceeding was still pending, and with a *Palma* notice outstanding, the trial court decided to reconsider its decision to grant NMG's motions in both cases. In light of the trial court's decision to reconsider its order compelling arbitration in *Monjazeb*, on April 11, 2012, Division Two denied the writ petition in No. A134624 without prejudice to renewal, if necessary, following the issuance of the order on reconsideration.

5

The court stated that, under *Peleg*, the NMG Arbitration Agreement was illusory and therefore unenforceable.[4]

NMG timely appealed.

## III. DISCUSSION

### A. The Trial Court Had Jurisdiction to Reconsider Its Order Compelling Arbitration

NMG contends that, once the trial court entered an order compelling arbitration, the court lost jurisdiction to reconsider whether the case belongs in arbitration. We disagree.

"If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order." (Code Civ. Proc., § 1008, subd. (c).) Even without a change of law, a trial court may exercise its inherent jurisdiction to reconsider an interim ruling. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1096–1097, 1107 (*Le Francois*).)[5] Specifically, the trial court has authority to reconsider orders compelling or denying arbitration. (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 59–60 (*Malek*); *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 739 (*Blake*), disapproved on other grounds in *Le Francois, supra,* at p. 1107, fn. 5; see Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2014) ¶ 5:335.6, p. 5-293.)

---

[4] The trial court issued a nearly identical reconsideration order in *Monjazeb*, and NMG appealed from that order as well (No. A137491). The appeal in No. A137491 was ultimately dismissed before the completion of briefing, after the parties stipulated to the dismissal of the appeal. On our own motion, we take judicial notice of the record in No. A137491.

[5] Without attempting to delineate the precise boundaries of the *Le Francois* rule, we note that even this broad statement of the rule may not fully capture the extent of a trial court's power to correct its own error. In some circumstances, for example, a trial court may reconsider final orders on its own motion. (See *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1312-1313 & fn. 9 [court could reconsider appealable postjudgment order where time to appeal had not yet expired].)

6

The cases relied on by NMG do not establish the court lacked jurisdiction. As NMG notes, courts have held that, when an order compelling arbitration is in place and the trial court has stayed pending litigation while the arbitration is proceeding (see Code Civ. Proc., § 1281.4), the court retains only "vestigial powers over the matters submitted to arbitration[.]" (*Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 769.) The arbitrator, not the court, for example, must generally decide questions as to how the arbitration will be conducted (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 488–489 (*Titan/Value*)); the court may not dismiss a case for lack of prosecution when the claims at issue have been ordered to arbitration (*Blake, supra,* 93 Cal.App.4th at p. 738); and a court may not lift a stay of litigation while the arbitration remains pending on the ground the parties cannot afford to arbitrate (*MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 660–661 (*MKJA*)).[6]

These and similar cases cited by NMG are inapposite. None of them addresses a claim that a trial court lacks authority to reconsider its own order compelling arbitration. (See *Malek, supra,* 121 Cal.App.4th at pp. 59–60 [*Titan/Value* inapposite because it did not involve a motion for reconsideration; trial court had jurisdiction to reconsider its prior ruling compelling arbitration despite "the parties' near completion of arbitration"].) While it is correct as a general matter that the granting of a stay under Code of Civil Procedure section 1281.4 places the proceedings before the trial court in "the twilight zone of abatement" (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796), such a stay does not effect the "ouster of the judicial power vested in the trial court of this state by our Constitution" (*id.* at p. 1795). Because contractual arbitration "dr[aws] its vitality from the contract" (*id.* at p. 1806), a trial court has inherent power to revisit the foundational "question of whether the parties are bound by a particular

---

[6] In *MKJA*, a Colorado court had ordered the case to arbitration, so the scope of the California trial court's jurisdiction to lift the stay of California litigation was "even narrower" than that retained by a trial court that itself has granted a petition to compel arbitration. (*MKJA*, *supra*, 191 Cal.App.4th at p. 661.)

arbitration agreement" (*Malek, supra,* 121 Cal.App.4th at p. 56), just as it may on its own motion revise any other interim ruling in the action pending before it (*Le Francois*, *supra*, 35 Cal.4th at pp. 1096–1097).

After initially sending the vast bulk of this case to an arbitrator while keeping a piece of it—a split procedural result that presented its own complexities—the trial court continued to monitor and remain alert to new legal developments bearing on the correctness of its original decision to compel arbitration. In doing so, the court was responding to suggestions from the parties, pertinent developments in the appellate courts (including writ proceedings in this Court, see *ante* fn. 3), and its own considerable experience in this rapidly evolving area of law. That is as it should be. As Justice Frankfurter once observed, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." (*Henslee v. Union Planters National Bank & Trust Co.* (1949*)* 335 U.S. 595, 600 (Frankfurter, J., dissenting).) Recognizing this reality, the *Le Francois* rule provides ample flexibility to accommodate the need to revisit interim rulings sua sponte whenever and for whatever reasons a trial judge deems appropriate. An order compelling arbitration is not exempt from that rule.

**B.      A Court May Determine the Enforceability of the Arbitration Agreement**

NMG argues an arbitrator, not a court, must determine whether the NMG Arbitration Agreement is enforceable, because the Agreement delegates questions of enforceability to the arbitrator. Section 19 of the Agreement states: "Any dispute concerning this Agreement—the way it was formed, its applicability, meaning, scope, enforceability, or any claim that all or part of this Agreement is void or voidable—is subject to arbitration under this Agreement and shall be determined by the arbitrator."

Under section 2 of the Federal Arbitration Act (FAA) (9 U.S.C. § 2), a "written provision" in any "contract" "involving commerce" "to settle by arbitration a controversy thereafter arising out of such contract" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (See *Armendariz, supra,* 24 Cal.4th at pp. 97–98; see also Code Civ. Proc., § 1281.) Although

threshold questions of arbitrability are ordinarily for courts to decide in the first instance under the FAA (*Ajamian, supra,* 203 Cal.App.4th at pp. 781-782), the "[p]arties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 241 (*Tiri*).)

For a delegation clause to be effective, two prerequisites must be satisfied. First, the language of the clause must be clear and unmistakable. (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 69, fn. 1 (*Rent-A-Center*); *Tiri*, *supra*, 226 Cal.App.4th at p. 242.) The required clear and unmistakable expression is a "heightened standard" (*Rent-A-Center*, *supra*, 561 U.S. at p. 69, fn. 1), "pertain[ing] to the parties' manifestation of intent, not the agreement's validity. . . . [I]t is an 'interpretive rule,' based on an assumption about the parties' expectations. In 'circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter [of arbitrability],' [citation], we assume that is what they agreed to. Thus, '[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' " (*Ibid.,* italics omitted, citing *AT & T Technologies v. Communications Workers* (1986) 475 U.S. 643, 649.)

Second, the delegation must not be revocable under state contract defenses to enforcement. (*Rent-A-Center, supra,* 561 U.S. at p. 68; see *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142–1143 (*Sonic II*).) Among these defenses is unconscionability. In California, the common law doctrine of unconscionability was codified in 1979 in Civil Code section 1670.5. (*Carboni v. Arrospide* (1991) 2 Cal.App.4th 76, 81.) The Legislature adopted as generally applicable to all contracts the terms of a Uniform Commercial Code provision governing unconscionability. (*Carboni v. Arrospide, supra,* 2 Cal.App.4th at p. 81.) Although unconscionability is now codified as a statutory defense, a claim that a contract is unenforceable on this ground remains an equitable matter. (*Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1257.) " ' "That equity does not enforce unconscionable bargains is too well established to

9

require elaborate citation." ' … 'Under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law *or in equity* for the voiding of any contract.' " (*Ibid.*, citations omitted.)

As to the first requirement, the *Peleg* court determined that, under California law,[7] the NMG Arbitration Agreement did not clearly and unmistakably delegate enforceability questions to the arbitrator. (*Peleg*, *supra*, 204 Cal.App.4th at pp. 1442–1445.) The Agreement does point in two directions. Section 19 states the arbitrator is to decide enforceability questions, but the severability provision (section 22) recognizes a court may decide the same issue. (*Id.* at pp. 1441–1442.) Section 22 states in part: " 'If any *court* determines that this Agreement in its entirety shall not be *enforced,* such determination shall be effective only as to Covered Employees who reside in the state where such *court* is located, and not as to any other Covered Employees . . . .' " (*Id.* at p. 1442, italics added by *Peleg* court.) After reviewing California cases addressing similar contractual provisions, the *Peleg* court concluded "the inconsistency between the Agreement's delegation and severability provisions indicates the parties did not clearly and unmistakably delegate enforceability questions to the arbitrator." (*Id.* at p. 1444.)

NMG argues (1) this court should apply Texas law to determine whether the Agreement clearly and unmistakably delegates enforceability questions to the arbitrator, and (2) under Texas law, the Agreement does clearly and unmistakably delegate such questions. We agree with *Peleg* that under California law there is no clear and unmistakable delegation in the NMG Arbitration Agreement, but even assuming Texas law might dictate a different outcome on that threshold question, it makes no difference here because we conclude the second prerequisite to delegation—the nonrevocability of

---

[7] As the *Peleg* court noted, and as we discuss further below, the NMG Arbitration Agreement contains a choice of law clause adopting Texas law and the FAA. (*Peleg*, *supra*, 204 Cal.App.4th at p. 1442.) The *Peleg* court stated that, because the parties had not mentioned either set of legal principles in discussing who should determine enforceability (and had relied on California law in briefing the issue), the court would apply California law to that question. (*Ibid.*)

the delegation provision—is not met.  (See *Tiri, supra,* 226 Cal.App.4th at p. 242.)  As we shall explain, California law applies to this issue, and under California law the delegation provision is revocable because it is unconscionable.[8]

Pinela argued in the trial court, and argues on appeal, that both the delegation provision and the Agreement as a whole are unconscionable.  The trial court did not address unconscionability in either respect.  Because the issue was raised below and is properly before us, and because the underlying facts are undisputed, we will decide the legal question of unconscionability here, in the first instance.  (*Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1251.)  With no facts in dispute, our review is de novo. (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 178 (*Serafin*).)

" 'The core concern of [the] unconscionability doctrine is the " ' "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' " '  (*Sonic II, supra,* 57 Cal.4th at p. 1145.)  The doctrine is meant to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, so one sided as to shock the conscience, or unfairly one sided.  [(*Ibid.*)]"  (*Tiri, supra,* 226 Cal.App.4th at p. 243, fn. omitted.)  " 'Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.'  [Citation.]  ' "In assessing substantive unconscionability, the paramount consideration is mutuality." '  [Citation.]"  (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 145 (*Murphy*).)[9]

---

[8] Challenges to the validity of the delegation provision itself are for a court, not the arbitrator, to decide.  (*Rent-A-Center, supra,* 561 U.S. at p. 71; *Tiri, supra,* 226 Cal.App.4th at p. 241, fn. 4.)

[9] In a case currently pending before the California Supreme Court, the court requested supplemental briefing on the appropriate standard for determining whether a contract or contract term is substantively unconscionable.  (*Sanchez v. Valencia Holding Co.,* review granted Mar. 21, 2012, S199119, suppl. briefing ordered Feb. 19, 2014, and argued May 5, 2015 (*Sanchez*); see *Tiri, supra,* 226 Cal.App.4th at p. 243, fn. 6.)

The "analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable].' " (*Armendariz*, *supra,* 24 Cal.4th at p. 113.) The adhesive nature of an agreement under challenge thus " 'heralds the beginning, not the end, of our inquiry into its enforceability.' " (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1571.)

Moving a step deeper into the analysis, " ' "[u]nconscionability has both a 'procedural' and a 'substantive' element," the former focusing on " 'oppression' " or " 'surprise' " due to unequal bargaining power, the latter on " 'overly harsh' " or " 'one-sided' " results. [Citation.]' " (*Tiri, supra,* 226 Cal.App.4th at p. 243; accord, *Serafin, supra,* 235 Cal.App.4th at p. 177.) " ' "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.]' " (*Tiri, supra,* 226 Cal.App.4th at pp. 243–244.) "Both, however, need not be present to the same degree. A sliding scale is applied so that ' " 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " ' " (*Serafin*, *supra*, 235 Cal.App.4th at p. 178.) "The party opposing arbitration has the burden of proving unconscionability." (*Tiri, supra,* 226 Cal.App.4th at p. 244.)

"[The Supreme Court] explained [in *Rent-A-Center*] that any claim of unconscionability must be *specific to the delegation clause*. ([*Rent-A-Center, supra,* 561 U.S. at p. 73].)" (*Tiri, supra,* 226 Cal.App.4th at p. 244.) The plaintiff in *Rent-A-Center* failed to direct his claim of unconscionability specifically to the delegation clause, and thus delegation of the issue to the arbitrator was upheld in that case. (*Rent-A-Center,*

12

*supra,* 561 U.S. at p. 73.) To illustrate how such a claim might be made, however, the court explained that the employee's contention that discovery limitations in arbitration were substantively unconscionable would have had to be specifically directed at the delegation clause. "In the court's words, the employee 'would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable.' [(*Rent-A-Center, supra,* 561 U.S. at p. 74.)] The court acknowledged that this 'would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of [the employee's] factbound employment-discrimination claim unconscionable.' (*Ibid.*)" (*Tiri, supra,* 226 Cal.App.4th at p. 244.)

Pinela starts with an advantage over the plaintiff in *Rent-A-Center* because he does make a specific unconscionability challenge to the delegation clause. He first argues, as he did in the trial court, that the delegation clause is part of a contract of adhesion. We agree. NMG drafted the delegation clause and presented it to Pinela on a take-it-or-leave-it basis. The NMG Agreement is "mandatory." In his declaration in opposition to NMG's motion to compel arbitration, Pinela states it was his understanding he had to sign the Agreement to be hired, and a human resources manager later confirmed that was the case. Pinela further states that no one at NMG gave him the opportunity to discuss or change any of the provisions in the Agreement. NMG makes no argument that anything in the delegation clause (or the Agreement as a whole) was negotiable. To the contrary, in its opening brief on appeal, NMG affirms that all persons working for NMG after the initiation of the mandatory arbitration program were "subject to the program, including the arbitration agreement, as a condition of employment."

The procedural element of unconscionability, as noted above, focuses on two factors: oppression and surprise. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." (*Serafin*, *supra*, 235 Cal.App.4th at p. 177.) " ' " ' "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed

13

form drafted by the party seeking to enforce the disputed terms.' " ' " (*Tiri, supra,* 226 Cal.App.4th at p. 245.)  For the same reasons that we conclude the delegation clause is part of a contract of adhesion, we conclude it is procedurally unconscionable.

The delegation clause was presented along with the rest of the Agreement on a take-it-or-leave-it basis.  (*Ajamian, supra,* 203 Cal.App.4th at p. 794, fn. 11 [arbitration provision procedurally unconscionable where presented on take-it-or-leave-it basis].)  Courts have recognized that "the issue of delegating arbitrability questions to an arbitrator is a 'rather arcane' issue upon which parties likely do not focus." (*Tiri, supra,* 226 Cal.App.4th at p. 246.)  Here, section 16 of the NMG Arbitration Agreement, the choice of law clause, further complicates this issue, making it even less likely that an unsophisticated layperson like Pinela would understand how arbitrability questions are to be resolved under the Agreement.

Section 16 states:  "This Agreement shall be construed, governed by, and enforced in accordance with the laws of the State of Texas (except where specifically stated otherwise herein), except that for claims or defenses arising under federal law, the arbitrator shall follow the substantive law as set forth by the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. *The arbitrator does not have the authority to enlarge, add to, subtract from, disregard, or . . . otherwise alter the parties' rights under such laws, except to the extent set forth herein.*  The parties recognize that [NMG] operates in many states in interstate commerce.  Therefore, it is acknowledged and agreed that the Federal Arbitration Act, 9 U.S.C. § 1, et seq., shall govern this Agreement and the arbitration."  (Italics added, boldface omitted.)  Notably, the choice of law clause here is more exotic than a simple election of Texas rather than California law.  It adds the nuance that, where federal claims or defenses are at issue, Fifth Circuit law will govern.[10]

---

[10] In literal terms, section 16 specifies "the substantive law as set forth by the United States Supreme Court *and* the United States Court of Appeals for the Fifth Circuit" shall apply to federal "claims or defenses."  (Italics added.)  Of course, the

14

While this is not a case involving fraud or sharp practices, we conclude there is more than the minimum degree of procedural unconscionability that is always present with an adhesive contract. Grasping the import and meaning of this particular delegation clause would have been beyond the ken of most anyone in these rushed circumstances. Without going to the expense of hiring a lawyer—not just any lawyer, but a Texas lawyer skilled in the intricacies of arbitrability, with the choice of law overlay presented here— and then having sufficient time to seek and obtain legal advice from that lawyer, Pinela was not in a position to make an informed assessment of the consequences of agreeing to delegate all questions concerning the "applicability, meaning, scope [or] enforceability" of the Agreement to the arbitrator. Although the delegation clause was not hidden from him, it might as well have been.

We are not the first court to recognize that obscure, difficult to comprehend choice of law clauses may serve as traps for the unwary in mandatory arbitration agreements. In *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 54 (*Mastrobuono*), for example, Antonio Mastrobuono pressed an arbitration claim against Shearson, his securities broker-dealer, and won an arbitration award that included punitive damages. Invoking a New York choice of law clause in its standard form customer arbitration agreement, Shearson sought to vacate the punitive damages element of the award on the ground that New York law does not permit punitive damages in arbitration. (*Id.* at pp. 54-55.) Because Mastrobuono had a right to seek punitive damages under the Federal Arbitration Act, the United States Supreme Court upheld the award in its entirety. (*Id.* at pp. 55, 58, 61, 64.)

The Supreme Court refused to permit contractual displacement of Mastrobuono's right to punitive damages under a choice of law clause he likely never saw and would not

---

decisions of the United States Supreme Court always control on federal issues. There was no need for the parties to memorialize that by contract. The twist here is that in the absence of controlling United States Supreme Court precedent, Fifth Circuit law applies on federal issues.

15

have understood even if he had seen it. The Court explained that, at best, "[r]espondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result. That rationale is well suited to the facts of this case. As a practical matter, it seems unlikely that petitioners were actually aware of New York's bifurcated approach to punitive damages, or that they had any idea that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right. In the face of such doubt, we are unwilling to impute this intent to petitioners."[11] (*Mastrobuono, supra,* 514 U.S. at p. 63, fn. omitted.) Nor do we see a basis to conclude, on this record, that full knowledge and appreciation of the consequences of agreeing to the delegation clause may be inferred from the fact that Pinela signed an Acknowledgment of the Agreement.

Turning to substantive unconscionability, we look first to our recent decision in *Tiri*, where we explained that, in light of the United States Supreme Court's decisions in *Rent-A-Center, supra,* 561 U.S. at pages 73–74 (which held delegation clauses are valid absent a challenge specific to the delegation) and *Concepcion, supra,* 131 S.Ct. at page 1748 (which held courts may not issue categorical rulings that interfere with fundamental aspects of arbitration), "clear delegation clauses in employment arbitration agreements are substantively unconscionable only if they impose unfair or one-sided burdens that are *different* from the clauses' inherent features and consequences." (*Tiri,*

---

[11] For this point, the Supreme Court relied on section 206, comment a of the Restatement Second of Contracts, which is equally applicable in this case: " 'Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party.' " (*Mastrobuono, supra*, 514 U.S. at p. 63, fn. 10; see *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 831–832.)

16

*supra,* 226 Cal.App.4th at p. 248; see *id.* at pp. 249–250.)  Mindful of the requisite need to focus specifically on delegation, we declined in *Tiri* to follow prior decisions from this District holding that delegation clauses were unfair (and therefore substantively unconscionable) because (1) employees are more likely to bring enforcement challenges, and (2) arbitrators "could be invested in the outcome" of a challenge to the enforceability of an arbitration agreement.  (*Id.* at pp. 248–250 [declining to follow *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494 (*Ontiveros*) and *Murphy*, *supra*, 156 Cal.App.4th 138 on this point]; see *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1563, fn. 9 [concluding *Ontiveros* and *Murphy* have been undermined by more recent authority].)  Citing some of the same cases that we chose not to follow in *Tiri*, Pinela makes a sweeping argument that the delegation clause in the NMG Arbitration Agreement is substantively unconscionable because it would "frustrate[] the 'reasonable expectations' of NMG's employees" to have " 'an arbitrator, rather than a court, . . . determine his or her own jurisdiction.' "  Once again we reject this line of argument, for it proves too much.  As we noted in *Tiri*, unconscionability arguments framed so broadly that they amount to attacks on inherent features and consequences of arbitral delegation clauses run contrary to *Rent-A-Center* and *Concepcion*.

Pinela does, however, make a more particularized substantive unconscionability challenge to the delegation clause that meets the standard we described in *Tiri*, i.e., such a clause may be found substantively unconscionable where it imposes an unfair burden that is different from the inherent features and consequences of delegation clauses.  (See *Tiri, supra,* 226 Cal.App.4th at p. 249.)  Specifically, Pinela points out, because of the Texas choice of law provision, an arbitrator addressing Pinela's argument that the Agreement as a whole is unconscionable would not have the authority to apply California unconscionability standards in making that determination.  From this premise, Pinela argues the Texas choice of law provision—as applied under section 19, the delegation provision—renders section 19 unconscionable because it unfairly restricts the legal

17

arguments that he can make if he is required to arbitrate his claim that the NMG Arbitration Agreement is unconscionable.

This claim differs from the challenges to delegation discussed in *Rent-A-Center* and *Tiri*. (See *Rent-A-Center, supra,* 561 U.S. at p. 74 [employee did *not* argue that limitations on discovery, *as applied* to delegation provision, rendered *that provision* unconscionable]; *Tiri, supra,* 226 Cal.App.4th at p. 248 [employee did not "assert and demonstrate that the confidentiality clause *as applied to the delegation clause* renders *that* clause unconscionable by impeding her ability to arbitrate whether the arbitration agreement as a whole is unconscionable"].) We conclude it has merit. As noted, section 16 of the NMG Arbitration Agreement (the choice of law provision) requires application of Texas law (or, in some instances, Fifth Circuit law), and specifies: "*The arbitrator does not have the authority to enlarge, add to, subtract from, disregard, or . . . otherwise alter the parties' rights under such laws, except to the extent set forth herein.*" (Italics added.) While section 19 provides the arbitrator will determine a challenge to the enforceability of the Agreement brought by a California employee of NMG (such as Pinela), section 16 prohibits the arbitrator from applying California unconscionability standards in making that determination.

When the weaker party to an adhesion contract can show the contract is unconscionable under California law, a contractual provision requiring the application of a different state's law to enforce the contract is itself unenforceable. (See *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1148–1149 (*Samaniego*).) In *Samaniego*, a panel in Division Three of this District affirmed a trial court's determination that an arbitration clause in an employment agreement was unconscionable under California law. (*Id.* at pp. 1141, 1146, 1148.) The plaintiffs in that case spoke Spanish and did not read English (at all, or sufficiently well to understand). (*Id.* at pp. 1142, 1145.) They were given an employment contract in English and required to sign it, not knowing that the contract limited their substantive rights under California law. (*Id.* at pp. 1145, 1147-1148.) After analyzing substantive unconscionability, the

18

*Samaniego* court rejected the employer's argument that, pursuant to a choice of law provision in the employment agreement, the enforceability of the arbitration clause was governed by Illinois law. (*Id.* at pp. 1148–1149.) And it so held without examining the substance of Illinois law. (*Id.* at p. 1149, fn. 5 ["We need not and do not make any determination whether Illinois law would, in fact, require arbitration in this case"].)

In support of this holding, the *Samaniego* court relied on the California Supreme Court's decision in *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906 (*Washington Mutual*), stating: "[In *Washington Mutual*], the Supreme Court explained that '[u]nder [*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 (*Nedlloyd*)], . . . the weaker party to an adhesion contract may seek to avoid enforcement of a choice-of-law provision therein by establishing that "substantial injustice" would result from its enforcement [citation] or that superior power was unfairly used in imposing the contract [citation] [indicating that evidence of unfair use of bargaining power may defeat enforcement of a forum-selection clause contained in an adhesion contract].' ([*Washington Mutual*, *supra*, 24 Cal.4th] at pp. 917–918, fn omitted.) . . . ' "Choice-of-law provisions contained in [adhesion] contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent." ' ([*Washington Mutual*, *supra*,] at p. 918, fn. 6, quoting Rest.2d Conflict of Laws, § 187, com. b, p. 562.)" (*Samaniego, supra,* 205 Cal.App.4th at p. 1148.) Under these principles, the court explained, "the same factors that render the arbitration provision unconscionable warrant the application of California law. . . . [T]o the extent Illinois law might require enforcement of its arbitration clause, enforcing [the employer's] choice-of-law provision would result in substantial injustice. The trial court correctly declined to apply it." (*Samaniego, supra,* 205 Cal.App.4th at p. 1149, fn. omitted; see *Harris v. Bingham McCutchen LLP* (2013) 214 Cal.App.4th 1399, 1404 (*Harris*) ["As noted in *Samaniego*, in California the *weaker* party to an adhesion contract

19

may avoid enforcement of a choice-of-law provision therein where enforcement would result in substantial injustice, as defined by California law"].)

We find the analysis in *Samaniego* persuasive and apply it here. We have concluded the NMG Arbitration Agreement is a contract of adhesion and is procedurally unconscionable. Because of the choice of law clause in the NMG Arbitration Agreement, an arbitrator acting pursuant to the delegation clause could not (1) apply California law to determine whether the Agreement is unconscionable, or even (2) limit the application of the choice of law provision to the extent necessary to prevent substantial injustice, as California law would require. (See *Samaniego, supra,* 205 Cal.App.4th at pp. 1148–1149; *Harris, supra,* 214 Cal.App.4th at p. 1404; see also *Ajamian, supra,* 203 Cal.App.4th at p. 794, fn. 11 [delegation of enforceability questions was substantively unconscionable because "in order to obtain relief from having to present her claims to a three-arbitrator panel in New York under New York law, the [arbitration] provision would require [the plaintiff] to present her argument to that very three-arbitrator panel in New York under New York law"].) Instead, section 16 states the arbitrator would not have authority to alter the rights the parties have under Texas law. The elimination of Pinela's ability to contend that the NMG Arbitration Agreement as a whole is unconscionable under California law renders the delegation clause substantively unconscionable.

In addition to *Samaniego, Hall v. Superior Court* (1983) 150 Cal.App.3d 411, 416-417 (*Hall*) is instructive. *Hall*, a securities case, arose in a situation where two California investors exchanged their interests in an oil and gas limited partnership in return for stock in one of their co-investors, Imperial Petroleum, a Utah corporation. (*Id.* at p. 414.) The contract memorializing their exchange agreement contained *both* forum selection and choice of law provisions identifying Nevada as the selected forum and governing law. (*Ibid.*) When the two investors later sued Imperial in California on a securities fraud claim under California's Corporate Securities Law, Imperial invoked the forum selection clause. (*Id.* at pp. 414-415.) The trial court found the clause to be

20

enforceable and stayed the action, forcing the plaintiffs to repair to Nevada. (*Id.* at p. 415.) In reversing, the Court of Appeal analyzed the interaction of both clauses, noting that their enforceability was "inextricably bound up" with one another. (*Id*. at p. 416.)

The reason for considering the forum selection and choice of law provisions together in *Hall* was that a Nevada court's application of Nevada law pursuant to the choice of law clause would deprive the investor plaintiffs of the protection of California securities laws. (*Id.* at p. 418.) While recognizing that " 'California does not have any public policy against a choice of law provision, where it is otherwise appropriate' " and that " 'choice of law provisions are usually respected by California courts,' " the *Hall* court held that " 'an agreement designating [a foreign] law will not be given effect if it would violate a strong California public policy . . . [or] "result in an evasion of . . . a statute of the forum protecting its citizens." ' " (*Hall, supra,* 150 Cal.App.3d at pp. 416-417.) There was no need in *Hall* to try to divine what a Nevada court might do if it were to apply Nevada law, just as the *Samaniego* court saw no need to examine Illinois law. Because the effect of transferring the case to Nevada would have been to strip plaintiffs of statutory protections *guaranteed* them under California law, the mere *potential* that those protections might be undermined was enough to justify refusing enforcement of the Nevada forum selection clause. (See *Hall*, *supra*, 150 Cal.App.3d at pp. 418-419.)[12]

_____

[12] *Hall* was cited with approval in *Nedlloyd* as one of a number of California Court of Appeal decisions adopting what the Supreme Court described in *Nedlloyd* as the "modern, mainstream approach" to conflict of laws issues in section 187 of the Restatement Second of Conflict of Laws. (*Nedlloyd*, *supra*, 3 Cal.4th at p. 464.) *Hall* has also been cited and relied upon in the years after *Nedlloyd* (see, e.g., *Brack v. Omni Loan Co., Ltd.* (2008) 164 Cal.App.4th 1312, 1323; *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 13 (Ruvolo, J.); *Wimsatt v. Beverly Hills Weight Loss Etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1521), and has been followed in other states and in the federal courts as well (see, e.g., *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.* (9th Cir. 2010) 622 F.3d 996, 1005; *Beilfuss v. Huffy Corp.* (Wis. Ct. App. 2004) 685 N.W.2d 373, 376; *R&L Ltd. Investments, Inc. v. Cabot Inv. Properties* (D. Ariz. 2010) 729 F.Supp.2d 1110, 1113). (We note that, in *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 157–158, the appellate court departed from *Hall* in

21

Returning to the enforceability of the delegation clause in this case, it is the interaction of the choice of law clause (section 16) with the delegation clause (section 19) that we focus upon. Putting the matter in the language used by the *Hall* court, because the ability of the arbitrator to call upon California law in deciding the enforceability questions entrusted to him is a "consideration[] . . . inextricably bound up in the question of the validity of the choice of law provision," "a determination as to the validity of the choice of law provision [as it applies to the delegation clause] is prerequisite to a determination of whether the . . . [delegation] clause should be enforced." (*Hall*, *supra*, 150 Cal.App.3d at p. 416.) Because the choice of law clause at issue here fails that threshold test, the delegation clause fails with it.

Accordingly, because of the particular burdens imposed on Pinela by sections 16 and 19, burdens that are not an inherent feature or consequence of delegation clauses generally, and that were not borne equally by both contracting parties, we hold that the delegation clause in the NMG Arbitration Agreement is procedurally and substantively unconscionable. In our application of the sliding-scale test, we see more than a minimal degree of unconscionability for purposes of each prong of the test. No matter how finely we were to calibrate the scale at each end, the combination of both meets the overall test of unconscionability. Thus, we conclude, the delegation clause is unenforceable under California law.

## C. The NMG Arbitration Agreement As a Whole is Unconscionable

Having found the delegation clause to be unenforceable, we proceed to consider the enforceability of the NMG Arbitration Agreement as a whole. On reconsideration, the trial court, relying on *Peleg*, found the Agreement as a whole to be illusory and therefore unenforceable because section 21 permits NMG to modify its terms unilaterally

part, holding that, when a contract includes forum selection and choice of law clauses, the defendant may rely on a comparison of California law and the law of the foreign jurisdiction to show that enforcing the clauses will not diminish the plaintiff's unwaivable statutory rights. We conduct such a comparison in section III.D, infra.)

upon 30 days' notice.  We agree that the NMG Arbitration Agreement is unenforceable, but we reach that conclusion because it is unconscionable, not because it is illusory. Because we have already found procedural unconscionability, the enforceability of the Agreement as a whole rises or falls largely on an analysis of substantive unconscionability.  We therefore begin with that issue and focus most of our attention on it, applying California law, as we did in our delegation-specific analysis of unconscionability.

As we recently explained in *Serafin*, " '[s]ubstantive unconscionability . . . typically is found in the employment context when the arbitration agreement is "one-sided" in favor of the employer without sufficient justification, for example, when "the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration." ' " (*Serafin, supra,* 235 Cal.App.4th at pp. 177-178.)  "Additionally, '[t]o be valid, at minimum the arbitration agreement must require a neutral arbitrator, sufficient discovery, and a written decision adequate enough to allow judicial review.  Further, it must include all remedies available in a judicial action and the employee may not be required to pay unreasonable costs or fees.  [Citation.]  Elimination of or interference with any of these . . . provisions makes an arbitration agreement substantively unconscionable.'  (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248 (*Wherry*), citing [*Armendariz, supra,* 24 Cal.4th at p. 102].)"  (*Serafin, supra,* 235 Cal.App.4th at p. 178.)

Applying this test here, we see multiple unconscionable aspects to the NMG Arbitration Agreement.  Pinela attacks seven distinct provisions of the Agreement as substantively unconscionable, and of these we focus primarily on three.

First, although Pinela's discussion of the choice of law clause focuses chiefly on the delegation provision, he also argues, and we agree, that section 16 is more broadly problematic than that since it not only limits his ability to attack the Agreement as a whole as unconscionable, but on its face disables California substantive law, undermining his claims on the merits.  Since Pinela's wage-and-hour claims in this case are

23

specifically founded on California statutory law, section 16 works a substantial injustice on him as a citizen of California. (See *Samaniego, supra,* 205 Cal.App.4th at pp. 1148–1149; *Ajamian, supra,* 203 Cal.App.4th at pp. 798–799, 803, 804, fn. 17 [arbitration provision unconscionably required employee to waive California substantive law by requiring application of New York law to the employee's California employment; employer "fail[ed] to show that New York law would provide [the employee] with rights and remedies equivalent to those provided by California law"]; see also *Serafin*, *supra*, 235 Cal.App.4th at p. 183 ["Such a modification of California law [as to attorney fees and costs] is inappropriate under *Armendariz* as it has the effect of denying a plaintiff the rights and remedies he or she would have if he or she were litigating his or her claims in court"].)

The issue here is not whether the absence of certain *procedural* rights in arbitration (such as a bar on class proceedings or limited discovery) raises questions about whether statutory claims under California law may be pursued effectively in an arbitral forum. Texas extends statutory wage-and-hour protections to employees for at least some of the violations alleged here, but it does not recognize a private cause of action for enforcement of any of them. (See *Abatement Inc. v. Williams* (Tex. App. 2010) 324 S.W.3d 858, 863-865 (*Abatement*); Tex Lab. Code Ann., §§ 61.011–.020.) California does permit private enforcement of the Labor Code provisions identified in the TAC (see Lab. Code, §§ 203, 218, 226, subd. (e)(1), 226.7, subd. (c), 1194, subd. (a), 2699, subd. (a)), but section 16 amounts to an advance waiver of rights under those very statutes. By contractual choice of law, therefore, the *substantive* basis for Pinela's statutory claims has been eliminated, thus blocking him from pursuing his claims at all, not merely burdening their pursuit in arbitration.[13]

---

[13] At oral argument, NMG's counsel argued that section 16 applies only to the "interpretation" of the Agreement. This reading of section 16 is not only contrary to its plain language but inconsistent with established conflict of laws principles. Contractual choice of law clauses are generally construed to designate the substantive law of the

This aspect of the Agreement is plainly obnoxious to public policy in California. Under California law, statutory rights may be waived only if "(1) the statute does not prohibit waiver, (2) the statute's public purpose is incidental to its primary purpose, and (3) the waiver does not seriously undermine any public purpose the statute was designed to serve." (*Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1030, citing *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 426.) More specifically, many statutory rights designed for the protection of a class of employees, including the Labor Code rights identified in the TAC, are unwaivable. (Lab. Code, §§ 219, subd. (a), 1194,

---

chosen jurisdiction. In effect, they substitute for the conflict of laws analysis that would otherwise be used to establish the applicable law. (See, e.g., *Mastrobuono, supra,* 514 U.S. at p. 59 ["choice-of-law provision [specifying New York law] . . . may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship"]; Rest.2d Conf. of Laws (1971) § 187(3) [when parties choose the law of a state to govern their contractual rights and duties, "[i]n the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law"].) It is clear in this case that that is exactly what was intended. "[T]he starting point in the interpretation of the choice-of-law clause, like any contractual provision, is with the language of the contract itself." (*Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 722.) NMG's contention that section 16 applies narrowly to contract construction questions ignores the breadth of the clause and would render superfluous two of the three verbs in the phrase "*construed*, *governed* by, and *enforced* in accordance with the laws of the State of Texas . . . ." (Italics added.) NMG's position also fails to account for the express reference to "substantive law" in the exception dealing with federal law appearing in the second half of the first sentence of section 16 as well as the language in the second sentence of section 16 barring the arbitrator from "enlarg[ing], add[ing] to, subtract[ing] from, disregard[ing], or . . . otherwise alter[ing] the parties' rights under" Texas law (and the FAA as applicable). The most that can be said for NMG on this issue is that it "drafted an ambiguous document, and . . . cannot now claim the benefit of the doubt." (*Mastrobuono, supra,* 514 U.S. at p. 63.) We see no need to resort to tie-breaking rules of construction, however, because in our view there is no reasonable reading of section 16 as a whole other than that it is intended to require the application of the substantive law of Texas (and the FAA) and to displace the substantive law of jurisdictions not chosen to the extent there are any conflicts.

subd. (a).)[14]  Even when a limited waiver is permissible, the waiver of an important right must be " 'a voluntary and *knowing* act done with *sufficient awareness* of the relevant circumstances and *likely consequences.*"  (*County of Riverside, supra,* 27 Cal.4th at p. 806.)  Because there is nothing to support a valid and knowing waiver here, we conclude section 16 is substantively unconscionable.  (Cf. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 637, fn. 19 [upholding arbitrability of statutory antitrust claims under the federal Sherman Act with the caveat that "in the event . . . choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the [arbitration] agreement as against public policy"].)

Our determination of substantive unconscionability with respect to section 16 is buttressed by section 9.c of the Agreement, which limits the parties to selection of an arbitrator who is "licensed to practice law in Texas" and who "reside[s] in Texas."  These requirements, along with the provision requiring the arbitrator to apply Texas substantive law (section 16), create an arbitral process that is designed to favor one side—Texas-based NMG.  The procedures for arbitrator selection do give Pinela the right to

_____

[14] (See *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 804-805 (*County of Riverside*) ["[The Peace Officers'] Bill of Rights Act is, like many other statutory schemes enacted for the protection of a class of employees, not subject to blanket waiver.  (See, e.g., Lab. Code, §§ 206.5 [employee cannot waive claim for wages due or to become due], 219 [employee cannot waive statutes regulating payment of wages], 356 [employee cannot waive statutory prohibition against employer taking employee's tips], 2804 [employee cannot waive protection of workers' compensation laws], 2855 [employee cannot waive seven-year limitation on duration of personal services contracts]; Unemp. Ins. Code, § 1342 [employee cannot waive benefits under Unemployment Insurance Act]; *Henry v. Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1, 6–7 [employee cannot waive Labor Code right to be paid for unused vacation leave]; *Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 334–335 [employee cannot waive protections of Labor Code regulating wage reductions for tardiness]; *Benane v. Internat. Harvester Co.* (1956) 142 Cal.App.2d Supp. 874, 878 [employee cannot waive Elections Code right to two hours' paid leave to accommodate voting].)"].)

26

participate in choosing an arbitrator, but he cannot put forward his own suggested candidates who are members of the California Bar, chosen for their expertise in California wage-and-hour law and their willingness to apply whatever regime of substantive law may be dictated under California conflict-of-law principles. In a California wage-and-hour dispute where the claimant seeks to enforce the California Labor Code and PAGA, we see no rational justification to limit the pool of potential arbitrators in this fashion. (See *Ajamian*, *supra*, 203 Cal.App.4th at pp. 797, 801, 803 [arbitration provision was unconscionable, in part because it allowed employer to unilaterally select the arbitration organization that would conduct the arbitration].)

It is generally true that, under the FAA, "short of authorizing trial by battle or ordeal . . . parties can stipulate to whatever procedures they want to govern the arbitration of their disputes" and those procedures will be respected no matter how "idiosyncratic" they may be (*Baravati v. Josephthal, Lyon & Ross, Inc.* (7th Cir. 1994) 28 F.3d 704, 709), but setting up procedures that have no apparent justification other than to tilt the scale of arbitral justice to one side's advantage crosses the line. Both the appearance and the reality of objective fairness matter when analyzing substantive unconscionability. As our Supreme Court explained in *Armendariz*, " ' "unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." ' [Citation.] If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for [a] lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." (*Armendariz, supra,* 24 Cal.4th at pp. 117–118.)

Second, section 14.a of the Agreement ("Agreed Statute of Limitations") specifies a private statute of limitations generally requiring all claims to be brought within one year after the employee's employment with NMG ends. Section 14.a states: "All Claims must be brought within the time allowed by the applicable statute of limitations, provided that no claim may be brought after one (1) year of the date that the [employee's]

27

employment with [NMG] ceased.  However, if a specific remedial statute provides for a longer limitations period and the arbitrator determines that to limit the time to a period shorter than that provided by statute would be illegal or unconscionable under applicable law, then the statutory time limitation shall be enforced by the arbitrator."  California courts have held that, in the context of statutory claims such as the wage-and-hour claims brought by Pinela, a provision in an arbitration agreement shortening the statutory limitations period is substantively unconscionable.  "The Labor Code . . . affords employees three or four years to assert [wage-and-hour claims].  [Citations.]  Where, as in this case, arbitration provisions undermine statutory protections, courts have readily found unconscionability."  (*Samaniego*, *supra*, 205 Cal.App.4th at p. 1147; see *Wherry, supra,* 192 Cal.App.4th at p. 1249.)

We are not persuaded by NMG's argument that section 14.a is valid because it includes a saving clause allowing the arbitrator to enforce a longer limitations period if the arbitrator determines that applying the shorter private limitations period specified in the Agreement "would be illegal or unconscionable under applicable law."  We have concluded above that the Agreement's delegation of unconscionability questions to the arbitrator is itself unconscionable.  Moreover, despite the general statement that the arbitrator may determine whether a shortened private limitations period is invalid "under applicable law," the arbitrator's authority to enforce California law limiting the waiver of particular limitations periods is uncertain in light of the directive in section 16 that the arbitrator is to apply Texas law and lacks authority to alter the rights the parties have under Texas law.

Third, Pinela challenges section 11 of the Agreement, which states that, although NMG must pay most arbitration costs and the parties must pay their own attorney fees, the arbitrator may award such costs and fees "as part of any award, to the extent such an award is permitted by applicable law."  We agree this provision is substantively unconscionable as well, because imposition of costs and fees on Pinela may burden his exercise of statutory rights.  "[W]hen an employer imposes mandatory arbitration as a

28

condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz, supra*, 24 Cal.4th at pp. 110–111, italics omitted; see *Sonic II*, *supra*, 57 Cal.4th at pp. 1143–1144 [imposition of costs and fees on employee may burden exercise of statutory rights]; *Ajamian, supra,* 203 Cal.App.4th at p. 800 [attorney fee provision "arguably strips [the employee] of her right to recover attorney fees under her California statutory [Labor Code] claims" and "imposes on her the obligation to pay [the employer's] attorney fees where she would have no such obligation under at least one of her California statutory claims"]; *Wherry*, *supra*, 192 Cal.App.4th at p. 1249.)

In *Serafin*, we recently addressed this very issue, noting that a provision in an arbitration agreement requiring both parties to bear their own attorney fees and costs was substantively unconscionable (but severable in the circumstances of that case) because it "runs counter to [California's Fair Employment and Housing Act (FEHA)] which allows a successful plaintiff to recover attorney fees and costs from the employer (but does not similarly allow an employer to recover fees and costs from an employee in most cases)." (*Serafin*, *supra*, 235 Cal.App.4th at p. 183.) We stated: "Such a modification of California law is inappropriate under *Armendariz* as it has the effect of denying a plaintiff the rights and remedies he or she would have if he or she were litigating his or her claims in court." (*Serafin*, *supra*, 235 Cal.App.4th at p. 183.) As NMG noted in the trial court, section 11 of the Agreement authorizes an award of arbitration costs or attorney fees "to the extent such an award is permitted by applicable law." But, again, the arbitrator's authority to apply the limitations outlined above (California law's limitations on the imposition of fees and costs) is questionable in light of section 16 of the Agreement.

It is illuminating to compare the contract at issue in this case to the one we recently analyzed for unconscionability in *Serafin, supra*, 235 Cal.App.4th 165. There, because the plaintiff showed a minimal degree of procedural unconscionability arising from the adhesive nature of the arbitration agreement at issue, under the sliding-scale

29

approach she had the burden of making a strong showing of substantive unconscionability. (*Id.* at pp. 180-181, 185.) She was unable to demonstrate any one-sidedness or lack of mutuality. (*Id.* at p. 182.) And she pointed to only one clause that we found to be substantively unconscionable, a provision apportioning attorney fees and costs. (*Id.* at pp. 183-184.) After determining the fees and costs apportionment provision to be severable (*id.* at pp. 183-184), we found that no substantive unconscionability remained and affirmed the trial court's order compelling arbitration (*id.* at p. 185).

Here, the sliding-scale approach produces a different result. The record shows more than the minimal degree of procedural unconscionability shown in *Serafin.* And in sharp contrast to *Serafin,* substantive unconscionability infects at least three contract provisions (in addition to the delegation clause), including one that would have the effect of disabling California law in a case involving claims anchored in the statutory law of California. Since both procedural and substantive unconscionability are present, Pinela meets the overall test for unconscionability. Unless the unconscionable provisions can be severed, we conclude that the NMG Arbitration Agreement as a whole is unenforceable under California law. Severance was the correct solution in *Serafin* where only one clause in an arbitration agreement was found to be substantively unconscionable, but in light of our determination that multiple provisions of the NMG Arbitration Agreement are substantively unconscionable here, we conclude that severance of the offending provisions is not appropriate. (See *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 90 ["When an arbitration agreement contains multiple unconscionable provisions, '[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage' "].) The unconscionability we have found permeates the NMG Arbitration Agreement to such a degree that severance would amount to re-writing the parties' contract, something we cannot do. (See *Ajamian, supra,* 203 Cal.App.4th at p. 803.)

30

**D. California Law Applies Whether We Apply The Abbreviated Test For Enforcement of The Choice of Law Clause Under *Samaniego* and *Hall*, or a Full *Nedlloyd* Comparative Governmental Interest Analysis**

We complete our unconscionability analysis by returning briefly to the issue of choice of law, which in many ways lies at the heart of this case. We have applied California law under *Samaniego* and *Hall* at both steps of the analysis, initially with respect to the delegation clause, and then again with respect to the Agreement as a whole. But in light of the broadened scope of our evaluation at the second step of the unconscionability analysis, and in particular given our conclusion that the NMG Arbitration Agreement actually strips Pinela of statutory protections of California law on multiple levels—not merely that it has the potential to do so—we emphasize that we would reach the same conclusion, and we do reach the same conclusion, under a full *Nedlloyd* analysis.

Using the conventional *Nedlloyd* approach, a court must first determine "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest[atement Second of Conflict of Laws], § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (*Nedlloyd, supra,* 3 Cal.4th at p. 466, fns. omitted; accord, *Washington Mutual, supra,* 24 Cal.4th at pp. 916–917.)

31

There is no question that the chosen state, Texas, has a substantial relationship to the parties. NMG, although a Delaware corporation, is headquartered in Texas. Nor can there be any real doubt that this case presents a conflict between California and Texas law. There is no legal basis in Texas law for the claims pleaded in the TAC. (See *Abatement*, *supra*, 324 S.W.3d at pp. 863-865.)[15] As a result, forcing Pinela to arbitrate under Texas law not only destroys the foundation for his affirmative claims, it eliminates his ability to argue unconscionability using California public policy as a measuring stick for enforceability. Texas law does recognize the equitable defense of unconscionability (*In re Poly-America, L.P.* (Tex. 2008) 262 S.W.3d 337, 348), and in some circumstances will refuse to enforce arbitration agreements that strip arbitration claimants of unwaivable statutory rights (*id.* at p. 349), but if the "chosen law" of Texas applies, Pinela had no rights to waive.

Faced with a conflict between California and Texas law, we turn to which state, California or Texas, has a greater interest in enforcement of its law in this circumstance. We acknowledge the value and efficiency to NMG of having a predictable, uniform wage-and-hour regime wherever it does business nationally, and we do not minimize the priority Texas may place on providing a hospitable legal climate for Texas-based employers that is conducive to such uniformity. But when weighed against the countervailing interest of California in ensuring that its statutory protections for California-based workers are not selectively disabled by out-of-state companies wishing to do business in this state, we think California has the materially greater interest. That being the case, the parties' choice of Texas law will not be enforced "for the obvious

_____

[15] As noted above (see *ante* fn. 10), section 16 of the Agreement designates Texas law "except . . . for *claims or defenses arising under federal law*, [and for those claims and defenses] the arbitrator shall follow the substantive law as set forth by the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit." (Italics added.) Since we are focused here only on whether there is a basis in state law to invoke the exception to section 2 of the FAA, this nuance in the choice of law clause appears to have no independent significance for purposes of our conflict of laws analysis.

reason" that it would be contrary to "fundamental policy" in California to do so. (*Nedlloyd, supra,* 3 Cal.4th at p. 466.) The preemptive effect of the FAA may not be used, in effect, as a lever to nationalize the wage-and-hour policies of one state in derogation of the conflicting policies of other states.

Accordingly, whether by the short route, under *Samaniego* and *Hall*, or the long route, under *Nedlloyd*, California conflict of law rules lead us back to the same place—California law applies to the unconscionability analysis at step one, the pinpoint evaluation of the delegation clause, and at step two, the evaluation of the NMG Arbitration Agreement as a whole. We conclude that the delegation clause and the Agreement are both unconscionable and therefore unenforceable under California law. This case must proceed in court.[16]

## IV. DISPOSITION

The order denying NMG's petition to compel arbitration is affirmed. Pinela shall recover his costs on appeal.

---

[16] Because we have found the NMG Arbitration Agreement as a whole to be unenforceable on grounds of unconscionability, NMG's contention that the trial court erred by refusing to compel arbitration of Pinela's PAGA claim necessarily fails. There exists no enforceable agreement on which arbitration of that claim could be compelled.

33

_____
Streeter, J.

We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.

Trial court:             San Francisco City & County

Trial judge:            Hon. Richard Kramer

Attorneys:
Jackson Lewis LLP
David S. Bradshaw
Jeanette R. Youngblood
Nathan W. Austin
 (Attorneys for Defendant/Appellant)

Cornerstone Law Group
Gordon W. Renneisen
Kenneth A. Frost III
Harry G. Lewis

Law Offices of Douglas A. Kahn
Douglas A. Kahn
(Attorneys for Plaintiff/Respondent)