**ABATEMENT INCORPORATED, Alan Manring, and Gary Laughlin, Appellants,**

v.

**Kyle WILLIAMS, Appellee.**

No. 14–09–00523–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 7, 2010.

Dean Allen Hrbacek, Sugar Land, Elizabeth M. Bruman, Houston, appellants.

Syd Phillips, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and BOYCE.

## OPINION

LESLIE B. YATES, Justice.

Appellants Abatement Incorporated and Alan Manring[1] appeal from the trial court's judgment, entered after a jury trial, holding them jointly and severally liable for breach of an employment agreement with appellee Kyle Williams. In nine issues, Abatement and Manring argue that judgment was improper because the contract was unenforceable under the statute of frauds, the terms were too indefinite to give rise to a contract, the damages award was improper and should be reduced, and there was no basis for holding Manring individually liable. We hold that the trial court erred in holding Manring liable, and we reverse that portion of the trial court's judgment and render judgment that Williams take nothing against Manring. We affirm the remainder of the trial court's judgment.

## BACKGROUND

Because Abatement and Manring did not challenge the legal or factual sufficiency of the evidence supporting the jury's findings, we give only a brief overview of the factual background. In 2005, Abatement was generally in the business of asbestos abatement. Manring was Abatement's president, and Gary Laughlin was its vice president. Williams was involved in the construction business. In August 2005, Hurricane Rita caused extensive damage in portions of Texas. Abatement had an opportunity to repair two apartment complexes that had been seriously damaged, and it hired Williams and his crew to assist in the work. The terms of Williams's employment, which were not in writing, form the underlying basis of this lawsuit. The parties agree that Abatement promised to and did pay Williams $1,000 a week for his work. Williams claims that Abatement also promised to pay him a percentage of the profits of any job he worked on. Abatement denies making this promise. Abatement fired Williams in October 2006, allegedly for performance problems, without paying him any profits.

Williams sued Abatement, Manring, and Laughlin for breach of contract and fraud. The case went to the jury on breach of contract, and the jury found in favor of Williams. Abatement and Manring now appeal.

## ANALYSIS

### A. Statute of Frauds

▆ In its first issue, Abatement argues that the trial court erred in submitting any jury questions regarding the agreement because enforcement of the agreement is barred by the statute of frauds. The statute of frauds provides that an agreement "which is not to be performed within one year from the date of making the agreement" is not enforceable unless it is in writing. *See* TEX. BUS. & COM.CODE ANN. § 26.01(a), (b)(6) (West 2009). For the one-year provision to apply, performance within one year must be impossible. *See Chacko v. Mathew*, No. 14–07–00613–CV, 2008 WL 2390486, at *3–4 (Tex.App.-Houston [14th Dist.] June 12, 2008, pet. denied) (mem. op.); *Cruikshank v. Consumer Direct Mortgage, Inc.*, 138 S.W.3d 497, 501 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). Whether an

---

1. Gary Laughlin filed a notice of appeal but never filed an appellate brief or took any steps to pursue his appeal. Therefore, we dismiss his appeal for want of prosecution. *See* TEX. R.APP. P. 42.3(b).

agreement falls within the statute of frauds is a question of law. *Chacko,* 2008 WL 2390486, at *3.

Abatement argues that the evidence establishes as a matter of law that the agreement was for lifetime employment and thus was incapable of being performed within a year. We disagree. Abatement points to a transcript of a secret tape recording Williams made of a conversation between himself and Manring before Williams was fired. In the transcript, Williams states that "part of [what we agreed on] was that I had security with the company and that I didn't have to worry about being fired." However, Williams testified at trial that job security was talked about, not agreed upon, and that the term of his employment was never defined. Abatement agreed that Williams's term of employment was undefined. Manring even stated in the recorded conversation immediately after Williams made the comments about job security, "Hey, no—nobody can guarantee nobody's going to get fired." Thus, no one advocated at trial that Williams had been promised lifetime employment.

Abatement further points to testimony from Williams's wife stating her opinion that the agreement was "long term," that it "never [had] an ending time" but would be more than a year, and was like a marriage in that you did not go into it with the expectation of it ending in six months. But she admitted this was just what she was "hoping" for, and hopes and expectations are not enough to show performance within a year is impossible. *See Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 503–04 (Tex.1998) (stating that an employee's hope to work as long as she wanted did not show an agreement for many years of job security); *Chacko,* 2008 WL 2390486, at *3 (noting that a contract does not fall within the statute of frauds

one-year provision based on "the lack of any expectation that performance will be completed within a year").

This evidence shows nothing more than an at will employment situation with an indefinite term of employment, and such an agreement does not fall within the one-year provision of the statute of frauds. *See Montgomery County,* 965 S.W.2d at 503 (holding that "[a]n employment contract for an indefinite term is considered performable within one year" and that vague, indefinite, and general comments cannot create a definite term of employment). Thus, the evidence did not establish as a matter of law, or even create a fact issue, that that the agreement was incapable of being performed within one year. Rather, the statute of frauds does not apply as a matter of law. Therefore, the trial court did not err in submitting jury questions regarding the agreement. We overrule Abatement's first issue.

**B. Certainty of Terms**

 In its second issue, Abatement argues that the trial court erred in submitting any issues to the jury regarding the agreement because the terms of the agreement are too uncertain to be enforced. To be legally enforceable, a contract must be sufficiently definite in its material terms so that a court can understand what the promisor undertook. *See T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992); *Playoff Corp. v. Blackwell,* 300 S.W.3d 451, 455 (Tex.App.-Fort Worth 2009, pet. denied). A contract is sufficiently definite if a court is able to determine the material legal obligations of the parties. *See T.O. Stanley,* 847 S.W.2d at 221; *Inimitable Group, L.P. v. Westwood Group Dev. II, Ltd.,* 264 S.W.3d 892, 899 (Tex.App.-Fort Worth 2008, no pet.). Each contract must be considered individually to determine which terms are material. *T.O. Stanley,* 847 S.W.2d at 221; *Ini-*

*mitable Group,* 264 S.W.3d at 899. Whether an agreement fails for indefiniteness is a question of law. *Playoff Corp.,* 300 S.W.3d at 455; *Inimitable Group,* 264 S.W.3d at 899.

Abatement asserts that the contract is too indefinite in several ways. Abatement points to testimony from Williams showing that he was unclear initially whether he was contracting with Abatement or with Next Level Construction, which was an assumed name for Abatement at that time. Assuming without deciding that the distinction between contracting with a company or its assumed name is somehow material, the issue of who the parties to the contract were was resolved by the jury's finding that Abatement and Williams agreed that Williams would be paid a percentage of profits. Abatement does not challenge this jury finding on appeal, and unchallenged jury findings are binding. *See Solares v. Solares,* 232 S.W.3d 873, 880 (Tex.App.-Dallas 2007, no pet.); *Bunton v. Bentley,* 176 S.W.3d 1, 16 (Tex.App.-Tyler 1999), *remanded on other grounds,* 94 S.W.3d 561 (Tex.2002). Abatement also complains that the contract does not specify its duration or how it would be terminated, but that is the very definition of an at will agreement and does not render an agreement unenforceable. *See Montgomery County,* 965 S.W.2d at 502 (stating that at will employment agreements can be terminated for good, bad, or no cause); *Inimitable Group,* 264 S.W.3d at 899 (finding lack of duration term did not render contract unenforceable).

Abatement next insists that the failure to define how profits are to be calculated is fatal to the agreement. However, there is no evidence that the particular method of calculating profits was important to the parties at the time of the agreement. *Cf. Playoff Corp.,* 300 S.W.3d

at 456–57 (finding that method of calculating "fair market value" was material because parties had contemplated a specific formula to be determined by future negotiation). Undefined contractual terms should be interpreted according to common usage, and so doing does not render the contract unenforceable. *See Miga v. Jensen,* 25 S.W.3d 370, 376 (Tex.App.-Fort Worth 2000) ("Contract terms that at first appear to be uncertain 'are often readily made clear and plain by the aid of common usage and reasonable implications of fact.'" (quoting *Bendalin v. Delgado,* 406 S.W.2d 897, 900 (Tex.1966))), *rev'd in part on other grounds,* 96 S.W.3d 207 (Tex. 2002); *see also Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996) ("We give [contractual] terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense."). Abatement emphasizes other terms not defined in the contract, such as what actions by Williams trigger his right to payment or how disputes are to be resolved, but not every detail must be spelled out in the contract. The contract, based on undisputed evidence and unchallenged facts found by the jury, was for Williams to work for Abatement on an at will basis for a weekly salary and a percentage of the profits of each job. These contractual terms are specific enough for the parties to understand their material obligations. *See T.O. Stanley,* 847 S.W.2d at 221; *Inimitable Group,* 264 S.W.3d at 899. We overrule Abatement's second issue.

## C. Reduction of Damages Award

In its third issue, Abatement argues that the damages award should be modified to reflect payments Abatement made to Williams during his employment. In addition to his weekly salary, Abatement made two payments to Williams.

First, Abatement gave Williams $2,000, and all parties agree that this was a loan Williams had requested to help pay his bills. Abatement later gave Williams an additional $7,055. The parties disagree about the reason for this payment. Abatement maintains it was a second loan while Williams insists the money was an advance on the profits he would be owed when a certain job was complete. Abatement did not file a counterclaim against Williams for repayment or request repayment in any form. Abatement never argued to the court or the jury that these payments were profits and in fact argued they were loans and had nothing to do with payment of profits. On appeal, Abatement argues that the damages award for unpaid profits should be reduced pursuant to these prior payments. Payment is an affirmative defense that must be pleaded and proven by an accounting. *See* Tex.R. Civ. P. 94–95; *F–Star Socorro, L.P. v. City of El Paso,* 281 S.W.3d 103, 107–08 (Tex.App.-El Paso 2008, no pet.). Abatement never pleaded payment, and thus the issue is waived. *See F–Star,* 281 S.W.3d at 107–08. We overrule Abatement's third issue.

### D. Individual Liability

 In his fifth issue, Manring argues that the trial court erred in submitting a question to the jury that allowed the jury to find him individually liable under the Texas Labor Code for Abatement's failure to pay Williams profits. Williams concedes that Manring is not directly liable for breach of contract and is not liable under a theory of piercing the corporate veil.[2] The only way Williams seeks to hold Manring individually liable for unpaid profits is under chapter 61 of the Labor Code.

Chapter 61 of the Labor Code governs an employer's obligation to pay wages to employees and provides criminal penalties for employers who violate the statute. *See* Tex. Lab.Code Ann. §§ 61.011–.020 (West 2006); *see also Igal v. Brightstar Info. Tech. Group,* 250 S.W.3d 78, 81–82 (Tex. 2008). It defines "employer" as a person "who employs one or more employees" or "who acts directly or indirectly in the interests of an employer in relation to an employee." *Id.* § 61.001(4). In the jury charge, after the jury answered questions regarding the agreement between Abatement and Williams and the amount of profits promised and made, the jury was asked "Did [Manring] act directly or indirectly in the interest of [Abatement] in relation to [Williams]?" The jury answered "yes," and based solely on this answer, the trial court imposed joint and several liability *on* Abatement and Manring[3] for the full amount of the judgment. In doing so, the trial court erred.

 Chapter 61, part of the "Payday Law," provides an alternative remedial scheme for workers who have been denied wages. *See Igal,* 250 S.W.3d at 87; *Hull v. Davis,* 211 S.W.3d 461, 464 (Tex.App.-Houston [ 14th Dist.] 2006, no pet.). Rather than filing a breach of contract lawsuit in court, a worker can file a wage claim with the Texas Workforce Commission (TWC). *See* Tex. Lab.Code Ann. § 61.051 (West Supp.2009). This provides a streamlined process for obtaining relief to workers with smaller claims that might be too cumbersome to pursue in court. *See*

---

**2.** Therefore, we need not address Manring's first through fourth issues regarding the existence and enforceability of the contract.

**3.** The jury also answered a similar question in the affirmative regarding Laughlin, and the trial court imposed joint and several liability as to Laughlin as well. Because Laughlin's appeal has been dismissed for want of prosecution, we do not address the propriety of joint and several liability as to Laughlin.

*Igal,* 250 S.W.3d at 82, 87; *Hull,* 211 S.W.3d at 464. Thus, a worker has a choice either to file an administrative claim with the TWC or a common law breach of contract claim in district court. *Igal,* 250 S.W.3d at 82; *Hull,* 211 S.W.3d at 464. Williams filed a breach of contract lawsuit rather than a wage claim with the TWC. However, he sought liability against Manring based on the definition of employer provided in chapter 61.

▮ Chapter 61 specifically states that the definitions, including the definition of employer, apply "[i]n this chapter." TEX. LAB.CODE ANN. § 61.001. Nothing in chapter 61 indicates any intent to change the common law and import this definition into common law proceedings. Williams insists that a suit for failure to pay wages is both a common law breach of contract suit and a chapter 61 suit. This is incorrect. Common law claims and TWC claims are distinct remedial schemes, and a litigant must choose which one to pursue. *See Igal,* 250 S.W.3d at 87–88, 92 (describing the two remedial schemes and stating that "the claimant selects which horse to ride"). Williams argues that it is illogical that a person could be liable as an "employer" under the chapter 61 definition of employer in an administrative proceeding before the TWC but not be liable as an "employer" in a breach of contract suit based on the same conduct pending in district court. This argument fails because TWC claims and court-based actions differ in many other significant ways as well. For example, a TWC claim is subject to a 180–day limitations period while a breach of contract claim is subject to a four-year limitations

period.[4] Additionally, penalties can be recovered in a TWC claim but not in a breach of contract claim; in contrast, attorney's fees can be recovered in connection with a breach of contract claim but not in a TWC claim.[5] It was the legislature's choice to provide a different remedial scheme. Furthermore, this is no different than other situations in the employment context where the definition of employer varies across many causes of action and provisions of the Labor Code. *See, e.g., Alcala v. Tex. Webb County,* 620 F.Supp.2d 795, 803 (S.D.Tex.2009).

▮ Williams asserts that an employee can bring a chapter 61 claim in district court because violation of a statute "normally" gives rise to a private cause of action. Williams is mistaken. A cause of action may be implied only when a legislative intent to do so appears in the statute. *Brown v. De La Cruz,* 156 S.W.3d 560, 567 (Tex.2004). We apply a strict rule of construction to statutory enforcement schemes and imply causes of action only when the legislative intent is clear from the language of the statute. *See Witkowski v. Brian, Fooshee & Yonge Props.,* 181 S.W.3d 824, 831 (Tex.App.-Austin 2005, no pet.); *see also Brown,* 156 S.W.3d at 563, 566. Chapter 61 provides a detailed administrative enforcement scheme and allows the possibility for enforcement by the attorney general, and nothing in language of chapter 61 shows any intent to also allow a private right of action. Moreover, another portion of the Payday Law, chapter 62, specifically provides for a private cause of action for failure to pay minimum wages.[6] *See* TEX. LAB.CODE ANN.

---

4. *Compare* TEX. LAB.CODE ANN. § 61.051(c), *with* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (West 2002).

5. *Compare* TEX. LAB.CODE ANN. § 61.053, *with* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (West 2008).

6. There is no allegation in this case that Abatement failed to pay minimum wages, and it is undisputed that Abatement paid Williams $1,000 a week.

§§ 62.201–.205 (West 2006). The legislature's express inclusion of a private right of action in chapter 62 and omission of that language in chapter 61 strongly suggests that the legislature did not intend a private right of action under chapter 61. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 571–72, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (finding no private cause of action for statute "flanked by provisions of the [act] that explicitly grant private causes of action" and noting that "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly"); *Brown,* 156 S.W.3d at 568 ("[W]hen the Legislature includes a right or remedy in one part of a code and omits it in another, that may be precisely what the Legislature intended."); *Seidner v. Citibank (S.D.) N.A.,* 201 S.W.3d 332, 337 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) ("Legislative express provision of certain specific remedies strongly suggests that it did not intend to impliedly authorize other remedies.").

Williams insists that a comparison to federal law supports his theory. The Fair Labor Standards Act (FLSA) and chapter 61 have nearly identical definitions of employer. *Compare* 29 U.S.C. § 203(d) (2006), *with* Tex. Lab.Code Ann. § 61.001(4)(B). Though Williams cites cases in which individuals have been found liable for FLSA violations, these cases involve failure to pay overtime or minimum wages. *See, e.g., Lambert v. Ackerley,* 180 F.3d 997 (9th Cir.1999); *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983). The FLSA provides a private cause of action for failure to pay minimum wages and overtime pay; unlike chapter 61, it does not provide a private cause of action for other failures to pay wages, such as the one Williams alleges here. *See* 29 U.S.C.

§§ 206, 207, 216(b) (2003 & Supp. II 2008); *Villa v. Waters,* Civil Action No. SA–09–CV–0113 XR, 2009 WL 1650482, at *1–2 (W.D.Tex. June 11, 2009) (concluding employee did not state an FLSA claim because her allegations involved failure to pay wages rather than unpaid minimum wages or overtime pay). Thus, Williams misplaces his reliance on the FLSA in this context.

We conclude that the trial court erred in using the definition of employer found in chapter 61 as a basis for finding Manring individually liable for Abatement's failure to pay profits to Williams. We sustain Manring's fifth issue.[7]

## CONCLUSION

The trial court erred in holding Manring individually liable for Abatement's failure to pay Williams profits. Thus, we reverse the portion of the judgment against Manring and render judgment that Williams take nothing against Manring. We affirm the remainder of the trial court's judgment.

---

7. We need not address Manring's sixth issue regarding the amount of the damages award because we have determined that Manring is not liable for any of it.