**Affirm and Opinion Filed June 17, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00106-CV**

**LAFAYETTE NELSON III, Appellant**
**V.**
**EGYPTIAN MAGIC SKIN CREAM, LLC, Appellee**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-16833**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Myers

Lafeyette Nelson III appeals the trial court's judgment[1] dismissing his claim

for employment bonuses for the year 2015 from his employer, Egyptian Magic Skin

Cream, LLC. Nelson argues the trial court erred by granting Egyptian Magic's

motion for summary judgment because (1) his claim was not barred by res judicata;

(2) the Texas Workforce Commission's award did not apply to the whole of 2015;

---

[1] The "Agreed Final Judgment" was one with which Nelson agreed as to both form and substance. Ordinarily, a party's agreeing to the substance of a judgment would not preserve any nonjurisdictional error for appellate review. *See Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ). However, the agreed judgment provided that "Nelson does not waive his right to appeal the dismissal of his 2012–2015 bonus claims."

(3) the Commission's award was not clear; and (4) appellee did not meet its summary judgment burden. We affirm the trial court's judgment.

## BACKGROUND

Egyptian Magic manufactures and sells skin creams. Nelson was one of its employees. Nelson alleged Egyptian Magic agreed to pay him wages of $1250 per week and a bonus of $0.25 for every jar of skin cream it sold in 2015. In April 2015, Egyptian Magic notified Nelson that it had no money to pay him a salary or bonus. On December 29, 2015, Egyptian Magic paid Nelson $15,000. Egyptian Magic terminated Nelson on March 9, 2016.

On April 5, 2016, Nelson filed a "Wage Claim" with the Texas Workforce Commission (TWC) alleging Egyptian Magic failed to pay his wages and bonus. *See* TEX. LAB. CODE ANN. § 61.051 Nelson claimed unpaid wages of $32,500 for April through December 2015 and unpaid bonus of $253,019.25. On July 5, 2016, the TWC issued a Preliminary Wage Determination Order dismissing Nelson's wage claim. The order stated the TWC lacked jurisdiction over the claim for back wages because the wages were owed more than 180 days before Nelson filed his wage claim. *See id.* §§ 61.051(c), 61.052(b-1). The order stated Nelson was not entitled to money for his claim of unpaid bonus because "[n]o record of a bonus agreement can be substantiated." Nelson appealed the order to the Wage Claim Appeal Tribunal. *See id.* §§ 61.054–.0611. The Tribunal determined Nelson was entitled to back wages of $23,750. Concerning Nelson's claim for a bonus, the Tribunal stated,

The claimant also filed a claim for a bonus of $0.25 per 4 ounce jar of cream sold. The claimant did not know the specific number of jars sold. *The bonus is due in the spring of the following year.* The claimant's employer notified all employees on December 9, 2015 that all bonuses for the year would be $15,000.00 regardless of the number of jars sold. The claimant received his $15,000 bonus in December 2015.

. . . .

According to the testimony of both the employer's representative [sic]; the agreed bonus for 2015 was $15,000.00 and the claimant received a check for $15,000 in December 2015; therefore the claimant is not entitled to additional compensation.

(Emphasis added.) On December 30, 2016, the Tribunal denied Egyptian Magic's petition to reopen the hearing.

Nelson appealed the Tribunal's decision to the Commission. *See id.* §§ 61.0612–.0614. On August 18, 2017, the Commission mailed its "Findings and Decisions of Commission upon Review of Claim for Wages." The Commission agreed with the Tribunal that Nelson was entitled to back wages of $23,750, but it modified the Tribunal's decision to provide that Nelson was "entitled to $41,250.00 in gross unpaid bonuses." The Commission stated, "With this single exception [the unpaid bonus amount], the Commission hereby adopts the findings of fact and conclusions of law of the Wage Claim Appeal Tribunal, as if the same were copied herein in full." The Commission's Findings and Decisions stated appellant could "bring a suit to appeal the decision of the Commission" and that "[t]he suit must be filed not later than the 30th day after the date the decision of the Commission is

–3–

mailed." *See* TEX. LAB. CODE ANN. § 61.062. The thirtieth day after August 18, 2017, was September 17, 2017.

Nelson did not timely file suit for judicial review.[2] Instead, Nelson filed his original petition in this case for breach of contract on November 30, 2017, which was 104 days after the TWC mailed its decision to Nelson. The lawsuit sought back wages of $47,500 and unpaid "royalties" of $253,019.25, which was $0.25 per jar of cream Nelson alleged was sold in 2015. Egyptian Magic moved for a traditional summary judgment on the ground that Nelson's claims were barred by res judicata. Egyptian Magic's motion for summary judgment also asserted no-evidence grounds for Nelson's claims. While the motion for summary judgment was pending, Nelson amended his petition to add claims for the per-jar "bonus" or "royalty" claims for the years 2012 to 2014 as well as 2015. The trial court granted the motion for summary judgment in part and dismissed "Nelson's claim in this Lawsuit for any unpaid bonus, commissions, or royalties to which he claims he is or was entitled to be paid by Defendant during 2015." Egyptian Magic filed a second motion for summary judgment asserting Nelson's pre-2015 claims for bonus or royalties were barred by the statute of limitations and that Nelson had no evidence in support of the claims. The trial court granted Egyptian Magic's second motion for summary judgment in part and ordered that Nelson's claims "relating to 2012, 2013, or 2014

---

[2] Egyptian Magic timely filed suit for judicial review of the TWC's decision, but it nonsuited after Nelson filed this suit.

–4–

compensation allegedly owed to him by Defendant, including but not limited to, bonuses, commissions, or royalties" were dismissed.

The parties then agreed to a final judgment that required Egyptian Magic to pay Nelson $24,000 for back wages and that allowed Nelson to appeal the summary judgments dismissing his claims for bonuses for 2012 through 2015.

## PRO SE APPELLANT

Nelson is pro se in this case. We liberally construe pro se pleadings and briefs. *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). However, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Washington*, 362 S.W.3d at 854. To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 53 (Tex. App.—San Antonio 1999, pet. denied).

Nelson filed his appellant's brief on March 8, 2020. On April 8, 2020, we notified Nelson that his brief was defective for various reasons including because the argument did not contain citations to authorities. *See* TEX. R. APP. P. 38.1(i). We directed Nelson to file an amended brief that complied with the Texas Rules of Appellate Procedure within ten days. However, Nelson did not file an amended brief. On May 15, 2020, we ordered that the case would be submitted on Nelson's original brief.

"The failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal." *In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no pet.). In this case, Nelson's brief cites only one authority, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), which was cited for the proposition that "a fact is material if a dispute over the fact 'might affect the outcome of the suit under the governing law.'" Nelson cited no authorities concerning the grounds Egyptian Magic asserted for summary judgment. Therefore, Nelson has waived his issues on appeal.

In his appellant's brief, Nelson makes no argument that the trial court erred by granting summary judgment on his pre-2015 bonus claims. What Nelson does argue, albeit without any citation to authority, is that res judicata did not bar his bonus claim for 2015 and that he presented some evidence of the claim. In the interest of justice, we will address his arguments that the trial court erred by dismissing his claim for a bonus for the year 2015.

**RES JUDICATA & WAGE CLAIMS UNDER LABOR CODE CHAPTER 61**

Chapter 61 is part of the "Payday Law." It provides an alternative remedy for workers denied wages. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 87 (Tex. 2008); *Pipes v. Hemingway*, 358 S.W.3d 438, 448 (Tex. App.—Dallas 2012, no pet.). Rather than filing a breach-of-contract lawsuit, a worker can file a wage claim with the TWC. *See* LAB. § 61.051. Chapter 61 provides a streamlined

process for obtaining relief for workers with smaller claims that might be too cumbersome to pursue in court. *See Igal*, 250 S.W.3d at 82; *Abatement Inc. v. Williams*, 324 S.W.3d 858, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Thus, a worker has a choice either to file an administrative claim with the TWC or a common law breach-of-contract lawsuit in a court. Once a claimant pursues the administrative wage claim under the Payday Law to a final decision, "he foregoes his common law claims." *Igal*, 250 S.W.3d at 88. To pursue a common law claim for the same wages as sought in the administrative wage claim, the claimant must withdraw the administrative claim. *Id.* at 88–89. Res judicata bars a claimant from pursuing relief in a court of law after obtaining a final decision from the TWC for the same transaction. *Id.* at 90, 93; *Pipes*, 358 S.W.3d at 448.

"For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Igal*, 250 S.W.3d at 86. "Thus, a party may not pursue a claim determined by the final judgment of a court of competent jurisdiction in a prior suit as a ground of recovery in a later suit against the same parties." *Id.* "In short, res judicata precludes parties from relitigating claims that have been finally adjudicated by a competent tribunal." *Id.*

The Payday Law administrative wage claim procedure covers only wages that "became due for payment" within 180 days preceding the filing of the wage claim.

*See* LAB. §§ 61.051(c), .052(b-1).  In this case, Nelson filed his wage claim concerning the unpaid 2015 bonus on April 5, 2016.  Therefore, any claim Nelson had for an unpaid bonus that "became due for payment" between October 8, 2015, and April 5, 2016, was finally decided by the TWC.

Nelson cites to language in the Tribunal's decision as supporting his argument that part of his bonus for 2015 became due for payment before October 8, 2015.  The Tribunal stated, "The claimed wages were partially due before October 8, 2015.  Therefore a portion of the wage claim will be dismissed."  That portion of the Tribunal's decision was discussing Nelson's claim for unpaid weekly wages, not his claim for an unpaid bonus.  That statement by the tribunal did not concern Nelson's claim for an unpaid bonus.  Concerning when the bonus was due for payment, the Tribunal, stated, "The bonus is due in the spring of the following year."  Other summary judgment evidence included Nelson's statement to the TWC dated March 21, 2016, that he was always paid the bonus for one year in the following year, and a statement by Nelson, which he attached to his answer to Egyptian Magic's suit for judicial review and referring to the claim for the bonus, that "we were scheduled to be paid everything by February 15, 2016."[3]  Because the Tribunal found and the Commission adopted the finding that the 2015 bonus was due in the spring of 2016,

_____

[3] Nelson also stated in his first and second amended petitions, but not in his live petition, "Defendant also agreed to pay Plaintiff a royalty payment of 25 (twenty five) cents per jar of product produced.  There was a later adjustment to this agreement to pay the royalty after the end of the year."  Nelson stated in an affidavit attached to his motion to reconsider the first partial summary judgment that the bonus "was calculated after the year had ended."

–8–

the 2015 bonus "became due for payment" during the 180 days preceding the filing of the claim, and the claim included the bonus for all of 2015.

Nelson also argues the TWC decision is not clear. He states:

It is counter-intuitive to infer that TWC would specify the dates that they were using to determine payment for work and then intend for the bonus agreement to refer to a different work period. In other words, by granting the Motion for Summary Judgment this led to the inference that TWC would specifically restrict themselves to examining employment for the last 3 months of 2015 and then consider employment for the first 9 months of 2015.

. . . .

TWC never used the phrase "for 2015". TWC was silent as to what date range the bonus covered.

Nelson's argument misconstrues the law. The TWC award was not for work performed during the 180 days preceding the filing of the wage claim but was for the amounts that "became due for payment" during the 180 days. Nelson does not cite any evidence showing that the TWC determined the bonus became due for payment at any time other than during the 180 days preceding the filing of the wage claim.

Nelson also argues the bonus could not have covered the entire year because the TWC determined the bonus owed was $41,250, which equates to only 165,000 jars. Nelson asserts he presented evidence to the TWC showing Egyptian Magic sold at least 600,000 jars and probably over one million, which would have been a bonus of $150,000 to over $250,000. Nelson asserts Egyptian Magic "did not carry their burden by providing any evidence that the TWC determination of 165,000 jars

–9–

sold for 2015 was correct." Egyptian Magic had no such burden. Its burden was to show that Nelson's cause of action in this case was the same as that determined by the TWC. It did so by presenting evidence that the TWC determined the bonus became due for payment during the 180 days preceding the filing of the wage claim. Nothing in the record shows any portion of the bonus for 2015 became due for payment before October 8, 2015. Whether the TWC miscalculated Nelson's bonus is not something we can consider because the TWC's decision is final and Nelson did not seek timely judicial review of the order. *See* LAB. § 61.0614 ("An order of the commission becomes final 14 days after the date the order is mailed . . . .").

Nelson also cites the Commission's decision reviewing the Tribunal's decision. The Tribunal had determined that the only bonus to which Nelson proved he was entitled was the $15,000 amount he was paid in December 2015. After agreeing with the Tribunal that Nelson was owed $23,750 for unpaid salary, the Commission stated,

> In addition to his salary, the claimant had a bonus agreement with the employer to pay him $.25 per jar sold. Based on his bonus agreement, the claimant is entitled to $41,250.00 in gross unpaid bonuses. In total, the claimant is owed $65,000 in gross unpaid wages ($23,750.00 + $41,250.00).
>
> *With this single exception*, the Commission hereby adopts the findings of fact and conclusions of law of the Wage Claim Appeal Tribunal as if the same were copied herein in full.

(Emphasis added.) Nelson argues, "in awarding the $41,250 bonus to (Appellant) on August 2017, not only was the Commission silent on whether or not the $41,250

bonus was for the entire year of 2015, they took great pains to emphasize that the November 2016 [Tribunal's] decision differed from the August 2017 [Commission's] decision by noting twice in the record that there was [']one exception.'" Nelson's argument does not show that the TWC's award did not include Nelson's entire claim for a bonus in 2015. The Commission's adoption of the Tribunal's findings of fact and conclusions of law included the fact that "[t]he bonus is due in the spring of the following year." That finding was for "the bonus," not a portion of the bonus. Nothing in the record shows that any amount of the 2015 bonus became due for payment before October 8, 2015. The "single exception" pointed out in the Commission's decision was that Nelson was entitled to a bonus of $41,250, and not, as the Tribunal found, $15,000 that had already been paid. That statement does not cast doubt on whether the bonus covered by the decision was for all of the year 2015.

We conclude the summary judgment record conclusively established that Nelson's cause of action for the 2015 bonus was included in the TWC's decision. Therefore, that cause of action is barred by res judicata. *See Igal*, 250 S.W.3d at 86. Nelson has not shown that the TWC award was unclear or that Egyptian Magic did not meet its summary judgment burden. We overrule Nelson's arguments to the contrary.

We affirm the trial court's judgment.

200106f.p05

/Lana Myers//

LANA MYERS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LAFAYETTE NELSON III,
Appellant

No. 05-20-00106-CV     V.

EGYPTIAN MAGIC SKIN
CREAM, LLC, Appellee

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-16833.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee EGYPTIAN MAGIC SKIN CREAM, LLC recover its costs of this appeal from appellant LAFAYETTE NELSON III.

Judgment entered this 17th day of June, 2021.