# NO. 12-20-00184-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAI S. BYUN AND KIM A. BYUN D/B/A AJU INSURANCE AGENCY, APPELLANTS* | § | *APPEAL FROM THE 113TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *SOON O. HONG AND SOOK NAM BYUN, APPELLEES* | § | *HARRIS COUNTY, TEXAS* |

## *OPINION*

After a jury returned a verdict in favor of Appellants Jai S. Byun and Kim A. Byun d/b/a Aju Insurance Agency in their suit against Appellees Soon O. Hong and Sook Nam Byun for breach of contract, the trial court granted Appellees' motion for judgment notwithstanding the verdict (JNOV) and signed a take-nothing judgment.[1] In five appellate issues, the Byuns[2] contend that (1) the non-competition agreement was ancillary to an otherwise enforceable agreement and supported by mutual non-illusory promises, (2) the agreements were not unreasonable, (3) the agreements were not illegal, (4) the agreements were not unconscionable, and (5) because the jury's answers regarding the Hongs' sale of insurance policies while employed by Aju were not dependent upon the enforceability of the agreements and were not addressed by the motion for JNOV, the trial court erred in granting JNOV as to those findings. For the reasons explained herein, we affirm the trial court's judgment in part and reverse and render in part.

---

[1] This case was transferred to this Court from the First Court of Appeals in Houston, Texas, pursuant to a docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] We will refer to Appellant Jai Byun as "Byun," and we will refer to Appellee Soon Hong as "Hong." We will refer to Appellant Kim A. Byun as "Mrs. Byun," and we will refer to Appellee Sook Nam Byun as "Mrs. Hong." When speaking of Appellants or Appellees collectively, we will refer to them as "the Byuns" and "the Hongs," respectively.

## BACKGROUND

In 2009, Hong began working as a customer service representative for Byun, who owned Aju Insurance Agency. When Byun hired Hong, Hong was not licensed to sell insurance. Hong became licensed to sell property and casualty insurance on June 18, 2012, and he received his license to sell life and health insurance on July 30, 2013. On July 1, 2012, the Byuns signed an agreement with the Hongs. The contract consisted of four parts: employment agreement, management agreement, buy-sell agreement, and a "noncompetition and other" agreement. According to Byun, he included the two-year employment agreement in the contract because Hong could not afford to purchase Aju in 2012. The employment agreement stated that Hong would work in the office of Aju for a minimum of twenty hours per week and Mrs. Hong would work in the office for a minimum of forty hours per week. In addition, Hong was to receive a "basic commission" of $1,250 per month, and Mrs. Hong's salary would be $1,750 per month for the first three months and $2,000 per month thereafter. Hong was to be paid sales commission of 50% of the income from property and casualty income above $14,450, and any shortage would be carried over to the next month. The agreement also provided that any income greater than $5,000 per month would be deposited with Byun for a management security deposit, up to $15,000. The employment agreement section of the contract further stated that the Hongs "shall not engage in any other business than Aju except existing Amway business. Otherwise, it is the ground of default." According to Byun, Hong's employment as a salesman with Aju allowed Hong access to approximately 2,000 customer files, and Hong received commissions.

Under the terms of the management section of the contract, which would have begun on July 1, 2014, and ended on June 30, 2016, the Hongs would be responsible for Aju's operations, the Hongs would deposit $15,000 with the Byuns as a security deposit, and any of Hong's income over $5,000 "up to 20% of [the] purchase price" would "be used to purchase Aju." Like the employment portion of the agreement, the management section stated that except for the Hongs' existing Amway business, the Hongs could not engage in any business other than their work for Aju. During the management period, the Hongs would oversee Aju's operations and receive fifty percent of its net operating income. The buy-sell portion of the agreement provided that the Hongs would purchase Aju on July 1, 2016, for "$375,000 plus the amount over $173,400 of the gross [property and casualty] commission during 07/01/15-06/30/16[,]" and all life and health business would remain the property of the Byuns. Under the terms of the buy-sell agreement, the Hongs

also had an option to purchase Aju with cash at any time during the management period. The buy-sell agreement required the Hongs to retain "Aju" as the name of the agency. In addition, the agreement provided that the Byuns "may take over Aju in case of default of two consecutive monthly payments without a legal action." According to Byun, Hong was not obligated to purchase Aju, but Hong had the right to do so.

The "noncompetition and other agreement" section stated that the Hongs "shall not engage in the insurance or related business, directly or indirectly, within Harris County and all the adjacent counties for the period of 5 years after this agreement is in default or void." The agreement further required the Hongs to "keep all the information of Aju confidential." According to Byun, the Hongs were provided with confidential information regarding Aju's customers and finances, and "[t]he sole basis for this access and disclosure was the sales portion of the Agreement." The jury found that the parties intended the noncompetition agreement to become effective on July 1, 2012, the date the agreement was signed.

On October 24, 2012, the parties executed a supplemental agreement,[3] which provided that "Jai Byun shall advance to Soon Hong the difference when the gross income for Soon Hong and Sook Byun falls below $4,200 per month[.]" Furthermore, the advance agreement stated that the Hongs "shall be personally responsible for the advance." Byun testified that the parties modified their original agreement because Hong indicated that he needed more money, and Byun characterized the advances as "a personal loan."

Mrs. Hong obtained a higher-paying job and left Aju in January of 2014, and Hong left Aju the following month. According to Byun, Hong owed $10,754.62 for advances paid pursuant to the advance agreement. Hong testified that he was obligated to repay the advances. Byun testified that from 2014 to 2016, Hong competed against him and took business from him. Mrs. Byun also testified that Hong competed against Aju and had contacted some of Aju's customers. Hong testified that he competed with Aju in Harris County and surrounding counties during 2014, 2015, 2016, 2017, and 2018. Byun ultimately sold Aju to another buyer in June 2016.

The Byuns filed suit against the Hongs for breach of contract and sought damages for the Hongs' alleged breach of the covenant not to compete, as well as allegedly unearned advance commissions. The Hongs entered a general denial, asserted the affirmative defenses of illegality, offset and credit, and failure of consideration, and filed a counterclaim alleging fraud. The jury

---

[3] We will refer to the supplemental agreement as "the advance agreement."

found the following: the parties agreed that the Hongs would repay any advances; the Hongs would not sell insurance policies for their own benefit while working for Aju; the parties intended for the covenant not to compete to begin on July 1, 2012; Hong failed to repay advances against unearned commissions; the Byuns were entitled to recover damages of $10,794.62 for the unrepaid advances; Hong sold insurance policies for his own benefit while still associated with Aju; and Hong violated the covenant not to compete. The jury also found that the Byuns did not fail to comply with the agreement and did not commit fraud, the Hongs' failure to comply with the agreement was not excused, and the Byuns were entitled to recover (1) $297.09 as damages for Hong's sale of insurance policies for his own benefit while still associated with Aju and (2) damages of $15,000 for Hong's violation of the covenant not to compete.

The Hongs filed a motion for JNOV, in which they contended that the covenant not to compete was unenforceable because it is unreasonable, not supported by adequate consideration, invalid because no otherwise enforceable agreement existed, and unconscionable, and the advance agreement is illegal because it "failed to satisfy the statutory requirements for an employer to advance unearned wages to an employee." The trial court signed a final judgment, in which it found that "the underlying agreements are unenforceable[,]" granted the Hongs' motion for JNOV, and ordered that the Byuns take nothing. This appeal followed.

## STANDARD OF REVIEW

A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict when a directed verdict would have been proper. TEX. R. CIV. P. 301. A motion for JNOV should be granted when (1) one party is entitled to recover as a matter of law because the evidence is conclusive, or (2) a legal principle precludes recovery. *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 806 (Tex. App.—Dallas 2011, no pet.); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Thus, we review the granting of a motion for judgment notwithstanding the verdict under a legal sufficiency standard. *Tanner v. Nationwide Mut. Fire Ins.*, 289 S.W.3d 828, 830 (Tex. 2009); *Pointe W. Ctr., LLC v. It's Alive, Inc.,* 476 S.W.3d 141, 150 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). When, as here, a trial court does not specify the basis for granting judgment notwithstanding the verdict, an appellant must show that the judgment cannot be sustained on any of the grounds asserted in the motion; that is, we must affirm a JNOV if it can be sustained on any

ground or combination of grounds set forth in the motion. ***Fort Bend Cty. Drainage Dist. v. Sbrusch***, 818 S.W.2d 392, 394 (Tex. 1991); ***Viajes Gerpa, S.A. v. Fazeli***, 522 S.W.3d 524, 530 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); ***Monk v. Dallas Brake & Clutch Serv. Co***., 697 S.W.2d 780, 783-84 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

## VALIDITY OF THE COVENANT NOT TO COMPETE

In issue two, the Byuns argue that the trial court erred by holding that the underlying agreements are unenforceable because they are unreasonable. Because issue two is dispositive with respect to the covenant not to compete, we address it first.

## Applicable Law

Covenants not to compete are restraints of trade, and they are unenforceable as a matter of public policy unless the restraints are reasonable. ***John R. Ray & Sons, Inc. v. Stroman***, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *see* TEX. BUS. & COM. CODE ANN. § 15.50(a) (West 2021). The enforceability of a covenant not to compete is a question of law. ***Powerhouse Prods., Inc. v. Scott***, 260 S.W.3d 693, 696 (Tex. App.—Dallas 2008, no pet.); *see also* ***Gorman v. CCS Midstream Servs., L.L.C.***, No. 12-09-00204-CV, 2011 WL 1642624, at *3 (Tex. App.—Tyler 2011, no pet.) (mem. op.). We therefore review a trial court's determination of whether a covenant to compete is reasonable de novo. ***EMS USA, Inc. v. Shary***, 309 S.W.3d 653, 659 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The enforceability of a covenant not to compete should not be decided on excessively technical disputes over whether the covenant is ancillary to an otherwise enforceable agreement. ***Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson***, 209 S.W.3d 644, 655 (Tex. 2006). Rather, the core inquiry pursuant to the Covenants Not to Compete Act ("the Act") is whether the covenant's limitations as to time, geographical area, and scope of activity to be restrained are reasonable and do not impose a greater restraint than is necessary to protect the employer's goodwill or other business interest. ***Id***.; *see* TEX. BUS. & COM. CODE ANN. § 15.50(a).

"Unreasonable limitations on employees' abilities to change employers or solicit clients or former co-employees, *i.e.*, compete against their former employers, could hinder legitimate competition between businesses and the mobility of skilled employees." ***Marsh USA Inc. v. Cook***, 354 S.W.3d 764, 769 (Tex. 2011). However, valid covenants not to compete are reasonable restraints agreed to by the parties "and may increase efficiency in industry by encouraging

employers to entrust confidential information and important client relationships to key employees." *Id*. The Legislature crafted the Act with the goal of balancing these potentially conflicting interests. *Id*. at 770. "The hallmark of enforcement is whether or not the covenant is reasonable." *Id*. at 777.

To be enforceable, a noncompetition agreement must be reasonable in time, scope, and geographical area. *Id*. at 771. Generally, the territory in which the employee worked for the employer is a reasonable geographical restriction. *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660 (Tex. App.—Dallas 1992, no writ). A covenant not to compete is unreasonable if it imposes a greater restraint than necessary to protect the employer's business and goodwill. *Harthcock*, 824 S.W.2d at 660. "A restraint on client solicitation in a personal services contract is overbroad and unreasonable if it extends to clients with whom the employee had no dealings during his employment." *Shary*, 309 S.W.3d at 660. However, prohibiting a former employee from contacting existing customers does not necessarily equate to a prohibition against contacting customers with whom the former employee had no dealings; that is, "[a] restraint on client solicitation in a personal services contract limited to current customers is not necessarily unreasonable on its face." *Id*. An industry-wide exclusion from subsequent employment is unreasonable. *Gehrke v. Merritt Hawkins and Assocs., LLC*, No. 05-18-01160-CV, 2020 WL 400175, at *2 (Tex. App.—Dallas Jan. 23, 2020, pet. denied) (mem. op.) (citing *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386-88 (Tex. 1991)); *Stroman*, 923 S.W.2d at 85. Covenants not to compete that prohibit solicitation of clients with whom a former salesman had no dealings are unreasonable and unenforceable because they are not reasonably necessary to protect the employer's business interest of preventing the employee from taking clients to a competitor. *Gehrke*, 2020 WL 400175, at *3 (citing *Haass*, 818 S.W.2d at 386-88).

## Analysis

In this case, the covenant not to compete prohibited Hong from engaging in the business of insurance or "related business, directly or indirectly, within Harris County and all the adjacent counties" for the period of five years after the agreement ends. The agreement does not define "related business." The covenant not to compete is not limited to clients of Aju or clients with whom Hong had dealings while he was employed by Aju, nor does it merely prohibit Hong from engaging in the sale of insurance. Rather, the covenant not to compete prohibits Hong from

6

working in the insurance business in any capacity. In addition, the undefined term "related business" potentially expands the reach of the covenant not to compete even farther. *See generally Forum US, Inc. v. Musslewhite*, No. 14-17-00708-CV, 2020 WL 4331442, at *8 (Tex. App.—Houston [14th Dist.] July 28, 2020, no pet.) (mem. op). For all these reasons, we conclude that the scope of the covenant not to compete is overly broad as to the activities it seeks to restrain and therefore constitutes an unreasonable restraint of trade. *See* TEX. BUS. & COM. CODE ANN. § 15.50(a); *Marsh USA Inc.*, 354 S.W.3d at 771; *Haass*, 818 S.W.2d at 386-88; *Gehrke*, 2020 WL 400175, at *2-3; *Shary*, 309 S.W.3d at 660; *Johnson*, 209 S.W.3d at 655; *Stroman*, 923 S.W.2d at 85; *Harthcock*, 824 S.W.2d at 660. Having concluded that the covenant not to compete is unenforceable because its scope is overly broad as to the activities restrained, we need not consider the reasonableness of the time and geographical limitations imposed by the covenant not to compete. *See* TEX. R. APP. P. 47.1.

Section 15.51(c) of the Act provides that if a covenant that is found to be ancillary to or part of an otherwise enforceable agreement contains unreasonable limitations, the trial court shall reform the covenant "to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business of the promissee and enforce the covenant as reformed[.]" TEX. BUS. & COM. CODE ANN. § 15.51(c) (West 2021). Assuming without deciding that the covenant is ancillary to or part of an otherwise enforceable agreement, the covenant not to compete expired by its own terms in 2019, *i.e.*, five years from the date the agreement terminated upon the Hongs' departure from Aju in 2014. We therefore conclude that any reformation would be an exercise in futility, and we need not remand the case to the trial court to reform the covenant not to compete. *See Stroman*, 923 S.W.2d at 85 (holding that because the covenant not to compete expired, "any reformation of that provision by the trial court would have been an exercise in futility.").

Because the covenant not to compete is unenforceable as written, the Byuns are precluded from recovering damages for the Hongs' violation of it, and this Court may render the judgment that the trial court should have rendered. *See* TEX. R. APP. P. 43.2(c), 43.3; *Stroman*, 923 S.W.2d at 85; *Haass*, 818 S.W.2d at 388 (concluding that because the plaintiff did not seek reformation of the covenant before the defendant's actions for which it sought damages, the Act prohibits the plaintiff from obtaining damages). Accordingly, we overrule issue two and affirm the trial court's

judgment to the extent it ordered that the Byuns take nothing as to their claim for violation of the covenant not to compete. *See* **Hunter**, 339 S.W.3d at 806; **Davis**, 848 S.W.2d at 173. Having found that the covenant not to compete is unreasonable and therefore unenforceable, we need not address issues one and four, in which the Byuns assert that the covenant not to compete was enforceable because it was ancillary to an otherwise enforceable agreement and was not unconscionable. *See* **Sbrush**, 818 S.W.2d at 394; **Monk**, 697 S.W.2d at 783-84 (explaining that an appellate court must affirm a JNOV if it can be sustained on any ground set forth in the motion).

UNREPAID ADVANCES

In issue three, the Byuns argue that the trial court erred by granting JNOV on the grounds that the underlying agreements were illegal. Because this issue implicates the Byuns' recovery of damages for advances made to the Hongs that were not repaid, we address issue three as to that topic.

## Applicable Law

Section 61.018 of the Texas Labor Code provides that an employer may not withhold or divert any part of an employer's wages unless the employer is ordered to do so by a court, is authorized by state or federal law to do so, or "has written authorization from the employee to deduct part of the wages for a lawful purpose." TEX. LAB. CODE ANN. § 61.018 (West 2021). The Texas Administrative Code defines a "lawful purpose" as "one that is authorized, sanctioned, or not forbidden, by law." 40 TEX. ADMIN. CODE § 821.28(a)(3). In addition, the Texas Administrative Code states that "[i]f a wage advance is not recouped in the next regularly scheduled paycheck following the advance, the employer shall comply with § 61.018[.]" 40 TEX. ADMIN. CODE § 821.29(c).

## Analysis

The jury found that the Hongs failed to repay advances against unearned commissions and awarded damages of $10,794.62 to the Byuns. In their motion for JNOV, the Hongs' sole argument regarding the damages for unearned commissions was that the advance agreement was illegal. Specifically, the Hongs argued that as to the Byuns' claims for failure to repay advances, the Byuns "failed to satisfy the statutory requirements for an employer to advance unearned wages to an employee[,]" which the Hongs assert are contained in Chapter 61 of the Texas Labor Code as well as volume 40 of the Texas Administrative Code.

The Texas Workforce Commission (TWC) promulgated the Texas Payday Rules (the Rules), including Section 821.29, pursuant to its authority to interpret and enforce Chapter 61 of the Texas Labor Code (the Payday Law). *See* TEX. LAB. CODE ANN. § 61.002 (West 2021) (stating that the TWC will administer and implement the statute); 40 TEX. ADMIN. CODE § 821.1 (providing that the purpose of the Rules is to implement and interpret the provisions of Chapter 61 of the Labor Code). The Payday Law "establishes an administrative system vesting authority in the [TWC] to govern the payment of wages by employers." ***Holmans v. Transource Polymers, Inc.***, 914 S.W.2d 189, 190 n.1 (Tex. App.—Fort Worth 1995, writ denied). To make a wage claim under the Payday Law, an employee is required to "file a wage claim with the [TWC] . . . in a manner and on a form prescribed by the commission." TEX. LAB. CODE ANN. § 61.051(a), (b) (West 2021).

An employee asserting a claim pursuant to the Payday Law may choose to either file an administrative claim with the TWC under the Payday Law or a common law breach of contract claim in court. ***Abatement Inc. v. Williams***, 324 S.W.3d 858, 864 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "Common law claims and TWC claims are distinct remedial schemes, and a litigant must choose which one to pursue." *Id*. A common law cause of action may be implied only when a legislative intent to do so appears in the statute. *Id*. We must strictly construe statutory enforcement schemes and "imply causes of action only when the legislative intent is clear from the language of the statute." *Id*. "Chapter 61 provides a detailed administrative enforcement scheme and allows the possibility for enforcement by the attorney general, and nothing in the language of chapter 61 shows any intent to also allow a private action." *Id*. Additionally, Chapter 62 of the Payday Law explicitly provides for a private cause of action for failure to pay minimum wages, and the Legislature's "express inclusion of a private right of action in chapter 62 and omission of that language in chapter 61 strongly suggests that the legislature did not intend a private right of action under chapter 61." *Id*. at 864-65.

The appellate record does not indicate that the Hongs filed a claim with the TWC. Rather, the record demonstrates that the Hongs elected to assert defenses and a counterclaim in the Byuns' lawsuit. The Hongs cite no authorities, and we are aware of none, that permit the provisions of Chapter 61 and the Rules promulgated by the TWC in the Texas Administrative Code to create or to govern private common law causes of action for breach of contract. *See id*.; ***Sbrusch***, 818 S.W.2d at 394 (appellate court may affirm a JNOV only on a ground asserted in the written motion for JNOV). We therefore conclude that the trial court erred by granting JNOV in favor of the

9

Hongs based upon the alleged illegality of the advance agreement under Chapter 61 of the Texas Labor Code and the Texas Administrative Code. We sustain issue three. We therefore reverse the trial court's JNOV that the Byuns take nothing on their claim for the unrepaid advances and render judgment in favor of the Byuns for damages of $10,794.62 in accordance with the jury's findings.

## SELLING INSURANCE POLICIES FOR OWN BENEFIT DURING EMPLOYMENT

In issue five, the Byuns argue that the trial court erred in granting JNOV as to the jury's findings that the Hongs failed to comply with the agreement because they sold insurance policies for their own benefit while working at Aju and that the Byuns were entitled to damages of $297.09 as a result.

### Applicable Law

A trial court may disregard a material jury finding only on written motion. TEX. R. CIV. P. 301; *St. Paul Fire & Marine Ins. Co. v. Bjornson*, 831 S.W.2d 366, 369 (Tex. App.—Tyler 1992). If the trial court's judgment notwithstanding the verdict can be upheld on any of the grounds asserted in the motion for JNOV, we must affirm the judgment. *Sbrush*, 818 S.W.2d at 394. A motion for JNOV must specifically identify the findings to be disregarded, present the reasons and authority for disregarding them, and request that the trial court either sign a judgment on the remaining findings, or, if all the findings are to be disregarded, a judgment contrary to all the findings. *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.*, 542 S.W.2d 882, 892 (Tex. App.—Corpus Christi 1976, writ ref'd n.r.e.) (op. on reh'g), *disapproved on other grounds*, *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006); *Bjornson*, 831 S.W.2d at 369.

### Analysis

Question two of the jury charge asked whether the parties agreed that the Hongs would not sell insurance policies for their own benefit while working at Aju. Question four contained three distinct parts, in which it asked whether the Hongs failed to comply with the agreement by (a) failing to repay advances against unearned commissions, (b) selling insurance policies for their own benefit while still associated with Aju, and (c) violating the covenant not to compete. Question nine asked what sum of money, if any, would fairly and reasonably compensate the Byuns for their damages, if any, that resulted from the Hongs' sale of insurance policies for their own benefit while still associated with Aju. The jury found that (1) the Hongs and the Byuns agreed that the Hongs would not sell insurance policies for their own benefit while working at Aju, (2) the Hongs

failed to comply with the agreement because they sold policies for their own benefit during their employment, and (3) the Byuns were entitled to damages of $297.09 as a result.

As discussed above, the charge asked the jury for separate determinations regarding failure to repay advances, selling insurance policies for their own benefit, and violating the covenant not to compete. The Hongs' written motion for JNOV did not challenge the jury's finding that the Hongs sold insurance policies for their own benefit while employed at Aju or the award of damages to the Byuns in the amount of $297.09.[4] Rather, the Hongs' motion for JNOV dealt only with the enforceability of the covenant not to compete and the alleged illegality of the advance agreement. The trial court submitted the covenant not to compete and the Hongs' obligation not to engage in other business except Amway while employed by Aju as separate, independent issues, and the parties' agreement likewise set forth those provisions in different sections. The covenant not to compete purported to govern the parties' relationship when the agreement terminated or became void, but the provision regarding not engaging in business other than Aju governed the parties' relationship while the Hongs were employed at Aju. We conclude that because the Hongs' written motion for JNOV did not challenge the jury's findings regarding the Hongs' sale of insurance policies for their own benefit during their employment at Aju and the resulting damages, the trial court improperly granted JNOV as to those jury findings. *See* TEX. R. CIV. P. 301; **Dupree**, 542 S.W.2d at 892; *see also **Westergren v. Nat'l Prop. Holdings, L.P.***; 409 S.W.3d 110, 121-22 (Tex. App.—Houston [14th Dist.] 2013), *aff'd in part and rev'd in part on other grounds*, 453 S.W.3d 419 (Tex. 2015). We sustain issue five, reverse the trial court's JNOV as to the jury's answers to questions two, four, and nine, and render judgment in favor of the Byuns for $297.09. *See* TEX. R. APP. P. 43.2, 43.3.

## DISPOSITION

Having sustained issues three and five, we ***reverse*** the trial court's take-nothing judgment as to the jury's findings that the Hongs failed to repay advances and sold insurance policies for their own benefit while employed by the Hongs, as well as with respect to the jury's findings that the Byuns are entitled to damages of $10,794.62 and $297.09, and we ***render*** judgment in favor of the Byuns for $11,091.71 (the sum of those two amounts). *See* TEX. R. APP. P. 43.2(c), 43.3. Having overruled issue two after concluding that the covenant not to compete is unenforceable

---

[4] The Hongs also did not respond in their appellate brief to the Byuns' arguments regarding said jury findings.

because it is unreasonable, we ***affirm*** the remainder of the trial court's judgment, which granted JNOV as to the covenant not to compete and ordered that the Byuns take nothing as to their claim for violation of the covenant not to compete.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 16, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 16, 2022**

**NO. 12-20-00184-CV**

**JAI S. BYUN AND KIM A. BYUN D/B/A AJU INSURANCE AGENCY,**
Appellants
V.
**SOON O. HONG AND SOOK NAM BYUN,**
Appellees

Appeal from the 113th District Court
of Harris County, Texas (Tr.Ct.No. 2016-12589)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was error in judgment as entered by the court below and that same should be reversed and judgment rendered.

It is therefore ORDERED, ADJUDGED and DECREED by this Court that the trial court's take-nothing judgment as to the jury's findings that the Appellees failed to repay advances and sold insurance policies for their own benefit while employed by the Appellees, as well as with respect to the jury's findings that the Appellants are entitled to damages of $10,794.62 and $297.09, be **reversed**, and judgment **rendered** in favor of the Appellants for $11,091.71 (the sum of those two amounts); the remainder of the trial court's judgment, which granted JNOV as to the covenant not to compete and ordered that the Appellants take nothing as to their claim for

violation of the covenant not to compete is hereby **affirmed**.  All costs of this appeal be, and the same are, adjudged against the Appellees, **SOON O. HONG AND SOOK NAM BYUN,** for which let execution issue; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*